UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>             Plaintiff,<br><br>     v.<br><br>PATH AMERICA, LLC, et al.,<br><br>             Defendants. | CASE NO. C15-1350JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE RECEIVER'S MOTION FOR AUTHORITY TO MARKET AND SELL RECEIVERSHIP ASSETS, ESTABLISH SALE PROCEDURES, AND ENGAGE A BROKER |

## I.     INTRODUCTION

Before the court is Receiver Michael A. Grassmueck's ("the Receiver") motion for authority to market and sell Receivership assets, establish sale procedures, and engage a broker.  (Mot. (Dkt. # 183).)  The court has considered the motion, all submissions filed in support of and opposition to the motion, the balance of the record, and the applicable

//

//

ORDER- 1

law.  In addition, the court heard the argument of counsel on April 18, 2016.[1]  Being fully

advised, the court GRANTS in part and DENIES in part the motion as more fully

described below.

## II.    BACKGROUND

On August 24, 2015, Plaintiff Securities and Exchange Commission ("the SEC")

filed this action against Defendants Losbang Dargey, Path America, LLC, Path America

SnoCo, LLC, Path America Farmer's Market, LP, Path America KingCo, LLC, Path

America Tower, LP, Path Tower Seattle, LP, and Potala Tower Seattle, LLC

(collectively, "Defendants"), and Relief Defendants Potala Shoreline, LLC, and Potala

Village Kirkland, LLC (collectively, "Relief Defendants") alleging three counts of

securities fraud.[2]  (*See generally* Compl. (Dkt. # 1).)  The SEC alleged that Defendants

exploited a federal visa program to defraud investors seeking investment returns and a

path to United States residency and raised at least $125 million through the sale of

securities to 250 investors, along with at least $11 million in additional fees.  (*Id.* ¶ 1.)

The SEC alleged that Defendants solicited investments predominantly from Chinese

citizens, claiming the investments would qualify under the EB-5 Program administered

---

[1] Counsel for the following entities, individuals, and groups appeared at the April 18, 2016, hearing and provided argument to the court:  (1) the SEC, (2) the Receiver, (3) Mr. Dargey and Relief Defendants Dargey Development, LLC, Dargey Enterprises, LLC, and Path Othello, LLC, (4) Intervenor PCL Construction Services, Inc., and (5) two separate groups of non-party investors.

[2] The SEC alleged violations of (1) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; (2) Sections 17(a)(1) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(3); and (3) Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).  (Compl. ¶¶ 46-57.)

1  by the United States Citizenship and Immigration Services ("USCIS").  (*Id.* ¶ 2.)  The

2  EB-5 Program provides that foreign nationals may qualify for United States residency if

3  they make a qualified investment of $500,000.00 or more in a specified project that is

4  determined to have created or preserved at least 10 jobs in the United States.  (*See id.*)

5  The SEC alleged that using the lure of the EB-5 Program and the promise of investment

6  returns, Defendants targeted Chinese nationals in a scheme to sell securities to finance

7  two different real estate development projects:  (1) a skyscraper in downtown Seattle

8  ("the Tower Project"), and (2) a mixed-use commercial and residential development

9  containing a farmer's market in Everett, Washington ("the Farmer's Market Project").

10  (*Id.* ¶ 3.)  However, the SEC alleged that, rather than use the money solely for these two

11  projects, Mr. Dargey and the other Defendants misappropriated or improperly diverted

12  tens of millions of dollars in investor funds.[3]  (*Id.*)

13       The court entered a temporary restraining order on August 24, 2015.  (TRO (Dkt.

14  # 9).)  On September 21, 2015, Defendants filed an accounting in compliance with the

15  temporary restraining order.  (Accounting (Dkt. # 32) (sealed).)  On October 2, 2015, the

16  SEC filed an amended complaint.  (Am. Compl. (Dkt. # 59).)  In its amended complaint,

17  the SEC added three new Relief Defendants:  Dargey Development, LLC, Dargey

18  Enterprises, LLC, and Path Othello, LLC (collectively, "New Relief Defendants").  (*Id.*

19

20

---

21       [3] In addition, the SEC alleged that Relief Defendants received and used investor funds for
22  projects unrelated to the projects for which investor funds were raised, and as a result, Relief
   Defendants do not have a legitimate claim to those funds.  (*Id.* ¶¶ 58-62.)

¶¶ 20-22.)  On October 6, 2015, the court granted the SEC's motion for a preliminary

injunction.  (*See* Ord. Granting Mot. for PI (Dkt. # 67); PI (Dkt. # 68).)

On October 22, 2015, the court granted the SEC's motion to appoint a receiver

over Defendants and Relief Defendants named in the SEC's initial complaint

(collectively, "Receivership Entities").[4]  (Order App. Receiver (Dkt. # 88) at 2.)  The

Order Appointing Receiver states:

> [T]he appointment of a receiver in this action is necessary and appropriate
> for the purpose of marshaling and preserving all assets of the Defendants,
> and of the Relief Defendants that:  (a) are attributable to funds derived from
> investors or clients of the Defendants; (b) are held in constructive trust for
> the Defendants; (c) were fraudulently transferred by the Defendants; and/or
> (d) may otherwise be includable as assets of the estates of the Defendants.

(*Id*.)  With this foundational purpose in mind, the Order Appointing Receiver authorizes

the Receiver to take immediate possession of all Receivership Property (*id.* ¶ 7.B), and to

engage brokers to sell or dispose of these assets (other than real estate), "in the manner

the Receiver deems most beneficial to the Receivership Estate."  (*Id.* ¶¶ 33-34.)  With

respect to real estate, the Receiver may only sell or transfer clear title to real property in

the Receivership Estates "[u]pon further [o]rder of this [c]ourt" and subject "to such

procedures as may be required by this [c]ourt and additional authority such as 28 U.S.C.

§§ 2001 and 2004."  (*Id.* ¶¶ 34-35.)

On December 24, 2015, USCIS issued a Notice of Intent to Terminate ("NOIT")

Path America KingCo's Regional Center designation.  (Divine Decl. (Dkt. # 189) ¶ 4, Ex.

---

[4] The three New Relief Defendants, named in the SEC's amended complaint, were not
included in the Receivership.  (*See* Order App. Receiver at 2.)

ORDER- 4

1.)  USCIS designated Path America KingCo as a "Regional Center" on June 6, 2013.

(Buchholz Decl. (Dkt. # 4) Exs. 19, 20.)  This designation meant that USCIS authorized

Path America KingCo to sponsor specific EB-5 Program investments, including the

Tower Project.  (*See id.*)  If USCIS ultimately terminates Path America KingCo's

Regional Center designation, USCIS will likely deny the Tower Project's EB-5 investors'

petitions for permanent residency in the United States.  (*See* Divine Decl. ¶ 6.)

On February 4, 2016, the Receiver moved the court for the authority to market

and, subject to further order from the court, sell the real property and other assets

comprising the Tower Project.  (*See* Mot. at 1.)  The Receiver states that he "has

determined, in his reasoned business judgment, that a sale or transfer of the Tower

Project Assets at this time will likely return the highest value to the [R]eceivership

[E]state."  (*Id.*)  The Receiver notes that the Tower Project is substantially underfunded.

(*Id.* at 3 (citing Receiver's Initial Report (Dkt. # 148)).)  The Receiver asserts that the

Receivership Entities fell short in raising EB-5 investor funds, and that over

$30,000,000.00 of investor funds was paid to, or on behalf of, various entities related to

or affiliated with Mr. Dargey, with little or no relation to the Tower Project.  (Receiver's

Initial Report at 11:9-11; Gadawski Decl. (Dkt. # 187) ¶ 6.)  In addition, more than

$16,000,000.00 has been refunded to investors from escrow accounts.  (Gadawski Decl. ¶

6.)  The Receiver contends that this significant shortfall makes completion of the Tower

Project absent additional funds infeasible.  (*Id.*)

Based on the analysis of a construction and development consultant, the Receiver

concluded that "an immediate sale of the Tower Project with existing entitlements will

1   yield the highest value with the least risk."  (Mot. at 3 (citing Lucas Decl. (Dkt. # 188)

2   and Grassmueck Decl. (Dkt. # 186) ¶ 5); *see also id.* at 5 (citing Grassmueck Decl. ¶ 8)

3   ("[T]he Receiver believes, in his reasoned business judgment, that an immediate sale of

4   Tower Project Assets on an "AS-IS, WHERE-IS" basis, will return the highest value for

5   the Receivership Estate.").)  Nevertheless, the Receiver states that he is open to proposals

6   from prospective buyers "wishing to pursue immigration goals with USCIS" (*Id.* at 5

7   n.2), although he also argues that the potential termination of the Regional Center and

8   revocation or denial of the EB-5 investors' USCIS petitions are likely based on the prior

9   actions of Defendants (Mot. at 4 (citing Divine Decl. ¶ 4)).  The Receiver contemplates

10  engaging a broker, locating a purchaser, and then seeking court approval of a private sale,

11  or alternatively, an auction in the court, subject to court approval following additional

12  motion practice.[5]  (*Id.* at 5-8.)

13      The SEC filed a statement of non-opposition to the motion.  (SEC Resp. (Dkt.

14  # 243).)  Mr. Dargey and New Relief Defendants oppose the Receiver's motion.  (Def.

15  Resp. (Dkt. # 215).)  They argue that the Receiver's motion should be denied because "it

16  would not 'preserve' the value of the Tower Project pending trial."  (*Id.* at 1.)  They

17  assert that the better course is to bring in an experienced real estate developer with EB-5

18  _____

19      [5] The Receiver also asks the court to waive notice and publication requirements pursuant
    to 28 U.S.C. §§ 2001 and 2002 (*see* Mot. at 10), but provides no briefing on this issue.  Mr.

20  Dargey and New Relief Defendants oppose the Receiver's request to waive these statutory notice
    and publication requirements.  (Def. Resp. (Dkt. # 215) at 11-12 ("The protections of these

21  statutes are important, and should not be waived, because they require notice to all interested
    parties before a sale, and they require three appraisals to ensure that the sale price correctly

22  reflects the value of the property.").)

ORDER- 6

1   experience to replace Dargey Development, LLC.  (*Id.* at 2.)  They argue that the

2   Receiver's motion reflects "creeping receivership," where a limited purpose, pre-trial

3   receivership slowly evolves into a bankruptcy without the benefit of established

4   bankruptcy rules or priorities.  (*Id.*)  They argue that such an outcome is fundamentally

5   unfair to Defendants, who have not had the benefit of a trial, and also would not serve the

6   interests of investors for whose benefit the lawsuit was filed.  (*Id.*)

7        Mr. Dargey and New Relief Defendants also argue that granting the Receiver's

8   motion will convince USCIS that the Tower Project is effectively finished, which will

9   cause USCIS to terminate the project's EB-5 status and deny the pending applications for

10  permanent residency in the United States by the EB-5 investors.  (*Id.* at 4.)  They argue

11  that the appropriate course of action for the Receiver is to explore whether additional

12  funds can be raised by selling the ownership interest of Dargey Holdings, which they

13  assert is 80% of the Tower Project.  (*Id.*)

14       In their response to the Receiver's motion, Mr. Dargey and New Relief

15  Defendants assert that Voya Investment Management, LLC ("Voya") is ready and willing

16  to provide such funding.  (Mitsanas Decl. (Dkt. # 217) ¶ 2.)  They assert that counsel for

17  Defendants, representatives of Voya, counsel for Shanghai Binshun Investment

18  Management Co., Ltd. ("Binjiang"), which owns 20% of the Tower Project, and a real

19  estate development company called The Molasky Group ("Molasky") have been

20  negotiating a proposal which would replace Dargey Development with Molasky as the

21

22

1  Tower Project developer, and would permit the project to be completed as approved by

2  USCIS.[6]  (*Id.* at 5-7.)

3        On February 16, 2016, Intervenor PCL Construction Services, Inc. ("PCL") timely

4  filed a response to the Receiver's motion.[7]  (PCL Resp. (Dkt. # 213).)  PCL has no

5  objection to the Receiver's motion "in principal" but asserts that as the general contractor

6  on the Tower Project it "has contractual rights it expressly reserves, and [it] will object to

7  any sale or action that attempts to minimize or contravene [those] rights."[8]  (*Id.* at 2.)

8  PCL also states that "with the Receiver's approval, [it has] spoken with and provided

9  information to multiple proposed purchasers of the . . . Tower Project," and "remains

10  willing to continue such conversations . . . upon request."  (*Id.* at 3.)

11        Two groups of investors also filed responses to the Receiver's motion.  (Inv. Resp.

12  1 (Dkt. # 211); Inv. Resp. 2 (Dkt. # 256).)  These investors ask the court to either (a) deny

13  the Receiver's motion without prejudice pending a final determination by USCIS on the

14  Tower Project's status as an EB-5 Program Regional Center, or (b) grant the motion on

15  _____

16     [6] Under the proposal, $28.2 million in proceeds from the transfer of Mr. Dargey's interest
to Binjiang and Molasky would be deposited into the Tower Project to replenish amounts

17  allegedly diverted, and if approved by the court, $1.8 million would be deposited in to the trust
account of Mr. Dargey's defense attorneys for payment of past and future legal fees.  (Def. Resp.

18  at 6.)

19     [7] PCL is the general contractor on the Tower Project.  (Grassmueck Decl. (Dkt. # 186)
¶ 4.)  PCL began construction on the Tower Project in March 2015, but suspended construction

20  on August 25, 2015, following the court's entry of the TRO.  (*See* Rosencrantz Decl. (Dkt. #
139) ¶¶ 7-8.)  At the time construction was suspended, much of the excavation work for the
Tower Project was complete and a tower crane had been erected.  (*Id.*)

21     [8] On November 20, 2015, the court entered an order allowing PCL to record a mechanics'

22  and materialmen's lien against the Tower Project.  (11/20/15 Stip. Order (Dkt. # 151).)

1  the condition that the Receiver consider only those potential buyers who would pledge to

2  complete the Tower Project in a manner consistent with its initial EB-5 Program goals.

3  (Inv. Resp. 1 at 2; Inv. Resp. 2 at 3.)[9]

4       On March 2, 2016, Mr. Dargey and New Relief Defendants filed a "Progress

5  Report" concerning their continuing efforts to negotiate a proposal to complete the Potala

6  Tower Project with EB-5 developer Molasky in a manner consistent with the original

7  goals of the EB-5 investors and utilizing additional investment funds from Binjiang. (*See*

8  Prog. Rep. (Dkt. # 241) at 1 (citing Mot.).)  Later the same day, the Receiver filed a

9  response to Defendants' Progress Report, arguing that any such proposal, even if

10  finalized, is irrelevant to the Receiver's present motion.  (Resp. to Prog. Rep. (Dkt. #

11  242).)  The Receiver asserts that any such proposal should only be considered in the

12  context of other proposals for disposition of the Tower Project and should only be

13  accepted if it is the best available option.  (*Id.* at 1.)

14       On April 1, 2016, the Receiver filed a Notice of Lodgement of a March 23, 2016,

15  "Notice of Termination" from USCIS.  (Lodgement (Dkt. # 264).)  In the March 23,

16  2016, Notice, USCIS states that it "has terminated the designation" of the Tower Project

17  "as a regional center" under the EB-5 Program.  (*Id.* Ex. A at 1.)  As support for its

18

19       [9] The SEC filed no reply memorandum or other opposition to the participation of these
   non-party investors.  (*See generally* Dkt.)  The Receiver filed a reply memorandum in response
   to the first set of investors (*see* Reply to Inv. 1 (Dkt. # 227)), but he did not object to their

20  participation in these proceedings.  Because no party has objected and every party has had the
   opportunity to respond, the court considers the memorandum and argument presented by these

21  investors for purposes of the present motion only.  *See SEC v. Charles Plohn & Co.*, 448 F.2d
   546, 549 (2nd Cir. 1971) (denial of investors' motion to intervene in SEC action affirmed
   because participation, including opportunity to submit proof and be heard at oral argument, was

22  adequate).

ORDER- 9

1  action, USCIS refers to the SEC's action herein against the Tower Project and "some of

2  its related EB-5 entities, and Lobsang Dargey," and the SEC's allegations that those who

3  managed the Tower Project, including Mr. Dargey, "engaged in improper or illegal

4  behavior," and diverted EB-5 funds.  (*Id.* Ex. A at 5-6, 8-9.)  USCIS notes that the

5  Receiver "failed to provide any evidence in opposition to the allegations of improper or

6  illegal behavior" and did not indicate whether the Tower Project "would be able to

7  operate financially," but "merely stated that no final determination has been made with

8  respect to the allegations that Mr. Dargey violated federal securities law."  (*Id.* Ex. A at

9  6.)  USCIS also notes that the Receiver filed a Recovery Plan (Dkt. # 170) with the court,

10  which recommended that the Tower Project be sold in its "as is" condition and that

11  accordingly it does not appear that the Tower Project will continue as an EB-5 project.

12  (*Id.* Ex. A at 7.)  The Receiver states that he "intends to take action to contest [USCIS's]

13  termination" of the Tower Project as an EB-5 Regional Center.  (*Id.* at 1.)

14       On April 5, 2016, Mr. Dargey and New Relief Defendants filed a response to the

15  Notice of Lodgement arguing that the Notice from USCIS supports their position that the

16  court should deny the Receiver's Motion for Authority.  (Resp. to Lodgement (Dkt.

17  # 266).)  Although Defendants support the Receiver's plan to appeal USCIS's

18  termination of the Tower Project as an EB-5 Regional Center, they assert that USCIS

19  relied in part on the Receiver's plan to market and sell the Tower Project "as evidence

20  that the Tower Project will not be completed as an EB-5 project" and as support for its

21  decision to terminate the Regional Center.  (*Id.* at 2.)  They argue that final termination of

22  EB-5 Regional Center status "could be catastrophic" for the Tower Project.  (*Id.*)

1    On April 8, 2016, the Receiver filed a reply to Defendants' response to the

2    Receiver's Notice of Lodgement.  (Reply to Lodgement (Dkt. # 269).)  The Receiver

3    argues that had USCIS reviewed its Motion for Authority, rather than just the Receiver's

4    response to the NOIT and the Receiver's Recovery Plan, USCIS would have seen that the

5    Receiver intends to consider transactions that contemplate completion of the Tower

6    Project in compliance with USCIS requirements.  (*Id.* at 2.)  The Receiver asserts that the

7    court's approval of his motion will actually provide the fastest avenue for potential

8    completion of the Tower Project in compliance with USCIS requirements and will thus

9    serve to strengthen his appeal of USCIS's termination of the EB-5 Regional Center.  (*Id.*)

10   At oral argument, counsel for Mr. Dargey and New Relief Defendants and counsel

11   for Binjiang announced that the parties had entered into a 12-page letter of intent setting

12   forth the principal terms and conditions relating to the proposed restructuring of the

13   Tower Project, subject to the approval of relevant authorities including the SEC and the

14   court.  The parties also acknowledged that the Receiver had received a second proposal

15   from another entity or entities involving completion of the Tower Project in a manner

16   consistent with the EB-5 program.  The Receiver, however, did not reveal any details

17   concerning this second proposal at the hearing.

18   **III.   ANALYSIS**

19   The "primary purpose of equity receiverships is to promote orderly and efficient

20   administration of the estate by the district court for the benefit of creditors."  *SEC v.*

21   *Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).  The court has broad power to determine

22   appropriate actions in the administration and supervision of an equity receivership.  *SEC*

1   *v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005); *CFTC v. Topworth Int'l,*

2   *Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999).  Thus, a court may appoint a trustee or

3   receiver, as the court did here, to preserve the status quo while arranging a defendant's

4   complicated business records.  *See, e.g.*, *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d

5   1082, 1105 (2d Cir. 1973) (approving the appointment of a receiver to unravel

6   complicated transactions and trace investors).  The court may also appoint a receiver on a

7   "*prima facie* showing of fraud and mismanagement."  *SEC v. Keller Corp.*, 323 F.2d 397,

8   403 (7th Cir. 1963).  The SEC made such a showing here.  (*See* Mot. to Appoint Receiver

9   (Dkt. # 38) & supporting declarations (Dkt. ## 39-40); *see also* Accounting.)  A receiver

10  is particularly necessary in instances where defendants have allegedly defrauded

11  members of the investing public to avoid the continued diversion or dissipation of

12  corporate assets.  *See SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 & n.14 (5th Cir.

13  1981).  Further, courts appointing receivers at the SEC's request can equip those

14  receivers with a variety of tools and broad authority "to help preserve the status quo

15  while various transactions [a]re unraveled" and "to obtain an accurate picture of what

16  transpired." *See Manor Nursing*, 458 F.2d at 1105 (alterations in original omitted).  This

17  is the course the court has followed here to date.  (*See generally* Order Appointing

18  Receiver.)

19          Nevertheless, "the power of a securities receiver is not without limits."  *See*

20  *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008).  Indeed, several circuit courts have

21  expressed doubts about "the propriety of allowing a [securities] receiver to liquidate an

22  estate." *See id.*; *see also Gilchrist v. Gen. Elec. Corp.*, 262 F.3d 296, 304 (4th Cir. 2001)

1    ("While it is true that the district court has broad equity power, any attempt to use that

2    power to supervise a complex corporate liquidation . . . would ultimately be more clumsy

3    and expensive than long-established bankruptcy procedures."); *SEC v. Am. Bd. of Trade,*

4    *Inc.*, 830 F.2d 431 436 (2d Cir. 1987) (noting the frequent admonition that "equity

5    receiverships should not be used to effect the liquidation of defendants in actions brought

6    under the securities laws"); *Esbitt v. Dutch-Am. Mercantile Corp.*, 335 F.2d 141, 143 (2d

7    Cir. 1964) ("We see no reason why violation of the Securities Act should result in the

8    liquidation of an insolvent corporation via an equity receivership instead of the normal

9    bankruptcy procedures.").

10          Significantly, the Ninth Circuit also has hesitated to permit a securities receiver to

11   order liquidation of a defendant corporation.  In *Los Angeles Trust Deed & Mortgage*

12   *Exchange v. Securities and Exchange Corporation*, 285 F.2d 162, 182 (9th Cir. 1960),

13   the Ninth Circuit held that the SEC could seek the appointment of a receiver in a

14   securities fraud case, but the receiver should be considered as one pendent lite only and

15   liquidation should be referred to a bankruptcy proceeding.  *Id.*  Specifically, the Ninth

16   Circuit stated:

17          [A] receiver does seem required.  But, we are not yet willing to order
             liquidation.  That would establish perhaps generally a special additional
18          penalty for failure to comply with the two Acts of Congress with which we
             were here concerned and we doubt that this was within the contemplation
19          of Congress.  We do not hold that liquidation can not ever be effected.
             Possibly some circumstances might arise which would justify such a result.
20          And, it could even eventuate in this case, but we hold 'not now.'

21   *Id.*; *see also SEC v. Current Fin. Servs., Inc.*, 783 F. Supp. 1441, 1445 (D.D.C. 1992)

22   ("The SEC requests that the Court now grant the receiver the authority to liquidate [the

ORDER- 13

1    defendant] and to declare bankruptcy.  It would be premature at this stage to confer such

2    broad powers.").  Nevertheless, whether liquidation is or becomes appropriate during the

3    course of a securities suit depends on the specific facts of each case.  *See SEC v. Lincoln*

4    *Thrift Ass'n*, 577 F.2d 600, 609 (9th Cir. 1978) (ruling that, although bankruptcy

5    proceedings may be preferred to liquidation of a corporation though an equity

6    receivership, the district court did not err in refusing to transfer the liquidation

7    proceedings to bankruptcy court because of the late stage of the receivership

8    proceedings).

9         Here, the court recognizes that there are costs associated with maintaining the

10   Tower Project in a state of stasis.  The Receiver indicates that on average those costs

11   have totaled approximately $165,700.00 per month so far.[10]  (Supp. Grassmueck Decl.

12   (Dkt. # 225) ¶ 3.)  In addition, the Receiver states that the master use permit for the

13   Tower Project is set to expire in just over a year, on May 20, 2017.  (Kendal Decl. (Dkt.

14   # 226) ¶ 3.)  To avoid expiration of the permit, a building permit or a fully complete

15   application for such a permit must be submitted before the current master use permit

16   expires.  (*Id.*)  According to the Receiver, "[t]his leaves little time for delay since any

17   third party buyer, . . . must finalize and submit their application by this deadline, a

18   process that may take some time depending on the structure to be built."  (Reply (Dkt. #

19   224) at 5.)

20

21   _____

22       [10] At oral argument, counsel for the Receiver acknowledged that these costs may be
     somewhat lower going forward but would still amount to tens of thousands of dollars per month.

1    Of more immediate concern, however, is the appeal timeline for USCIS's Notice

2  of Termination.  At oral argument, the parties indicated that a notice of appeal must be

3  filed no later than April 25, 2016 (one week from the date of the hearing).  In addition,

4  USCIS's Notice of Termination states that a brief in support of the appeal must be filed

5  no later than 30 calendar days after filing the notice of appeal.  (Lodgement Ex. A at 10.)

6  The Receiver has indicated that he intends to appeal the decision of USCIS to terminate

7  the EB-5 status of the Tower Project, and Mr. Dargey and New Relief Defendants

8  support this plan of action.  (Lodgement at 1; Resp. to Lodgement at 1.)  The parties,

9  however, dispute the impact that granting the Receiver's motion will have on this appeal.

10  (*Compare* Def. Resp. at 9-10 *with* Reply at 4; *compare* Resp. to Lodgement at 1, *with*

11  Reply to Lodgement at 1.)

12    There is no question that some disposition of the property is needed irrespective of

13  whether it is sold "AS-IS, WHERE-IS" as the Receiver recommends or the project is

14  resurrected and completed as Mr. Dargey, New Relief Defendants, and others

15  recommend.  The Receiver has indicated that it is not feasible for him to build the tower,

16  and accordingly, some court-approved transaction is needed for the Tower Project

17  irrespective of whether the court follows the path recommended by the Receiver or the

18  path recommended by Mr. Dargey, Relief Defendants, and others.  The only other option

19  would be for the Tower Project to sit in stasis until after trial, and the costs associated

20  with that course do not presently appear reasonable and would simply result in further

21  dissipation of the investments this proceeding is designed to preserve.

22

ORDER- 15

1       Nevertheless, given the recent developments with USCIS, the landscape upon

2  which the court decides this motion has shifted since the Receiver originally filed it.

3  First, in light of USCIS's Notice of Termination, and the Receiver's need to file a notice

4  of appeal and supporting memorandum within a short period of time, the deliberate pace

5  for marketing the Tower Project suggested in the Receiver's motion no longer seems

6  viable.  In addition, although the Receiver's immigration counsel is generally pessimistic

7  concerning any possible success on appeal of USCIS's Notice of Termination, he appears

8  to agree with counsel for Mr. Dargey and New Relief Defendants that the best chance of

9  prevailing is to demonstrate that the Tower Project can be completed in a manner

10  consistent with the EB-5 program's goals.  (*See* Divine Decl. ¶ 4; Def. Resp. at 10); *see*

11  *also* 8 C.F.R. § 204.6(m)(6).  In light of the interest of EB-5 investors and others in

12  continuing to pursue both the original immigration and financial goals underlying the

13  Tower Project, the court believes it is prudent to investigate proposals to complete the

14  Tower Project as an EB-5 program in addition to considering proposals to buy the Tower

15  "AS-IS, WHERE-IS" as recommended by the Receiver. [11]

16

17      _____

18      [11] The court agrees that a sale of the Tower Project "AS-IS, WHERE-IS" is unlikely to
advance investors' immigration goals.  (*See* Divine Decl. ¶ 4 ("[W]ithout special arrangements

19  designed to preserve the EB-5investors' indirect investment interest in the Tower Project and to
substantially preserve and continue the Tower Project's originally planned development, a sale

20  of the Tower Project could be deemed a failure of the EB-5 investors to sustain the planned
investment, thereby jeopardizing the Tower Project's EB-5 investors' eligibility for U.S.
permanent residence.").)  Nevertheless, the court is not yet convinced that the Tower Project can

21  be resurrected in the manner suggested by Mr. Dargey and New Relief Defendants or that
attempting to do so will prove to be the best course of action overall.  The court merely believes

22  that it is prudent to explore such options prior to expiration of USCIS's appeal deadlines.

ORDER- 16

1  Accordingly, the court grants in part and denies in part the Receiver's motion as

2  follows.  The court grants the Receiver's motion to retain a broker and market the Tower

3  Project and instructs the Receiver to solicit both proposals to buy the Tower Project on an

4  "AS-IS, WHERE-IS" basis as recommended in his motion (*see* Mot. at 4), as well as

5  proposals from prospective buyers wishing to pursue the investors' immigration goals

6  with USCIS and complete the Tower Project as planned (*see id.* at 5 n.2, Reply to Inv. 1

7  at 3).  Due to the need to file an appeal concerning USCIS's Notice of Termination,

8  however, the court also instructs the Receiver to act on a shortened timeline.  The

9  Receiver shall file a memorandum with the court no later than Friday, May 13, 2016, that

10  describes the proposals received so far and makes a recommendation as to the best offer

11  to date to purchase the Tower on an "AS-IS, WHERE-IS" basis and the best offer to date

12  to complete the project in a manner consistent with the EB-5 investors' goals.  In

13  addition, the Receiver shall make a recommendation to the court as between these two

14  options and also advise the court on the next steps the Receiver believes are necessary for

15  disposition of the Tower Project.  Any response to the Receiver's memorandum must be

16  filed no later than 12:00 noon on Tuesday, May 17, 2016.  If the Receiver wishes to file a

17  reply memorandum, he must do so by 12:00 noon on Wednesday, May 18, 2016.  The

18  court hereby schedules a hearing on this matter for Thursday, May 19, 2016, at 3:00 p.m.

19  The court understands that compliance with its order will require the parties to

20  undertake a substantial amount of work within a relatively short period of time.  The

21  court adopts this compressed timeline in recognition of the deadlines for appealing

22  USCIS's Notice of Termination.  Due to the compressed timeline, the court recognizes

ORDER- 17

1  that the Receiver may need to modify his proposed plan concerning the marketing of the

2  Tower Project and authorizes him to do so within his reasoned business judgment.  The

3  court also recognizes that any ruling during the May 19, 2016, hearing as to the

4  disposition of the Tower Project may be premature.  Thus, the court may decide that

5  more time is needed to consider the options or gather more proposals.

6        The court is also mindful of the SEC's cautionary note concerning the prospects

7  for success on appeal and the need to not inflate investors' expectations that USCIS will

8  reverse its present course concerning termination of the Tower Project's EB-5 status.

9  The court recognizes that irrespective of any proposals to either complete the Tower

10  Project or to sell it "AS-IS, WHERE-IS," the Receiver's appeal of the Notice of

11  Termination may fail.  Nevertheless, the court believes that it is prudent to explore

12  whatever concrete options may be available for completion of the Tower Project prior to

13  USCIS's appeal deadlines so the Receiver's appeal can be placed in as favorable a

14  posture as possible.

15        **IV.  CONCLUSION**

16        Based on the foregoing analysis, the court GRANTS in part and DENIES in part

17  the Receiver's Motion for Authority (Dkt. # 183) as more fully described above.  In

18  addition, the court DIRECTS the parties to submit memoranda in accord with the court's

19  //

20  //

21  //

22  //

ORDER- 18

1    directives and deadlines described above.  Finally, the court SCHEDULES a hearing in

2    this matter on May 19, 2016, at 3:00 p.m.

3            Dated this 20th day of April, 2016.

4

5

6    _____

7    JAMES L. ROBART
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 19