UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SECURITIES AND EXCHANGE
COMMISSION,

                        Plaintiff,

        v.

PATH AMERICA, LLC, et al.,

                        Defendants, and

POTALA SHORELINE, LLC, et al.,

                        Relief Defendants.

CASE NO. C15-1350JLR

ORDER GRANTING MOTION
TO MODIFY RECEIVERSHIP
ORDER

## I.        INTRODUCTION

        Before the court is Plaintiff Securities and Exchange Commission's ("SEC")

motion to modify the order appointing a receiver to include additional relief defendants.[1]

_____

        [1] The SEC's motion also sought leave to file a second amended complaint.  (Mot. at 3-6.)
The court previously granted this request because Defendants did not oppose that portion of the

ORDER- 1

1    (Mot. (Dkt. # 244).)  Specifically, the SEC moves to modify the court's order appointing

2    a receiver to add the following Relief Defendants into the Receivership:  (1) Dargey

3    Development, LLC, (2) Dargey Enterprises, LLC, (3) Path Farmer's Market, LLC, and

4    (4) Dargey Holdings, LLC.  (*Id.* at 7-9.)  Defendant Lobsang Dargey, and Relief

5    Defendants Dargey Development, Dargey Enterprises, Path Farmer's Market, Dargey

6    Holdings, and Path Othello, LLC (collectively, "Defendants") oppose the SEC's motion.

7    (Resp. (Dkt. # 250); Def. Supp. Resp. (Dkt. # 349).)

8           On May 19, 2016, the court heard the argument of counsel concerning the SEC's

9    motion.  (*See* 5/12/16 Order (Dkt. # 289) at 2; Min. Entry (Dkt. # 331).)  On May 24,

10   2016, the court issued an order "direct[ing] the parties to submit additional briefing and,

11   if appropriate, evidentiary materials concerning the SEC's motion."  (5/24/16 Order (Dkt.

12   # 338) at 2.)  In response to the court's order, the SEC filed a supplemental brief and

13   additional evidentiary materials on June 7, 2016.  (SEC Supp. Br.  (Dkt. # 345);

14   Gadawski Decl. (Dkt. # 346); LaMarca Decl. (Dkt. # 347).)  Defendants filed a

15   supplemental responsive brief and additional evidentiary materials on June 14, 2016.

16   (Def. Supp. Resp.; Larsen-Bright Decl. (Dkt. # 350).)  On June 21, 2016, the SEC filed a

17   supplemental reply memorandum.  (SEC Supp. Reply (Dkt. # 353).)

18   //

19   //

20

21   SEC's motion. (5/12/16 Order (Dkt. # 289).)  The SEC filed its second amended complaint on
     May 16, 2016.  (SAC (Dkt. # 307).)
22

ORDER- 2

1    The court has considered the SEC's motion, all submissions filed in support of the

2  motion and in opposition thereto, the relevant portions of the record, and the applicable

3  law.  Being fully advised,[2] the court GRANTS the SEC's motion for the reasons stated

4  below.

5                              **II.    BACKGROUND**

6    The SEC filed this action on August 24, 2015, and sought a temporary restraining

7  order ("TRO") against Mr. Dargey and nine of the corporate entities that he controls:

8  Defendants (1) Path America, LLC, (2) Path America SnoCo, LLC, (3) Path America

9  Farmer's Market, LP, (4) Path America KingCo, LLC, (5) Path America Tower, LP, (6)

10  Path Tower Seattle, LP, (7) Potala Tower Seattle, LLC, and Relief Defendants (8) Potala

11  Shoreline, LLC, and (9) Potala Village Kirkland, LLC.  (Compl. (Dkt. # 1); TRO Mot.

12  (Dkt. # 2).)  The court entered a TRO that same day (TRO (Dkt. # 9)) and converted the

13  TRO into a preliminary injunction on October 6, 2015 (PI (Dkt. # 68)).

14    The SEC alleges that Defendants exploited a federal visa program to defraud

15  investors seeking financial returns and a path to United States residency.  (SAC ¶ 1.)

16  Defendants allegedly raised at least $125 million through the sale of securities to 250

17  investors, along with at least $11 million in additional fees.  (*Id.*)  The SEC alleges that

18  Defendants solicited investments predominantly from Chinese citizens, claiming the

19

20    [2] In their supplemental response, Defendants request additional oral argument on the
21  SEC's motion.  (*See* Def. Supp. Resp. at title page.)  The court, however, has already heard the
   argument of counsel and ordered supplemental briefing.  (*See* Min. Entry; 5/24/16 Order at 2.)
22  The court does not deem further oral argument to be necessary for disposition of this matter.  *See*
   Local Rules W.D. Wash. LCR 7(b)(4).

1  investments would qualify under the EB-5 Program administered by the United States

2  Citizenship and Immigration Services ("USCIS").  (*Id.* ¶ 2.)  The EB-5 Program provides

3  that foreign nationals may qualify for United States residency if they make a qualified

4  investment of $500,000.00 or more in a specified project that is determined to have

5  created or preserved at least 10 jobs in the United States.  (*See id.*)  The SEC further

6  alleges that using the lure of the EB-5 Program and the promise of investment returns,

7  Defendants targeted Chinese nationals in a scheme to sell securities to finance two real

8  estate development projects:  (1) a skyscraper in downtown Seattle ("the Tower Project"),

9  and (2) a mixed-use commercial and residential development containing a farmer's

10  market in Everett, Washington ("the Farmer's Market Project").  (*Id.* ¶ 3.)  The SEC

11  alleges that rather than use the investors' money solely for these two projects, Mr. Dargey

12  misappropriated or diverted millions of dollars from these investors for other projects or

13  for his personal use.  (*Id.*)

14  On September 21, 2015, in response to the court's TRO, Defendants filed an

15  accounting with the court.  (Accounting (Dkt. ## 31-32).)  On September 22, 2015, the

16  SEC moved to appoint a receiver over the nine Dargey-related corporate entities named

17  in the initial complaint.  (Rec. Mot. (Dkt. # 38).)  On October 22, 2015, the court granted

18  the SEC's motion.  (Rec. Ord. (Dkt. # 88).)

19  On October 2, 2015, the SEC filed a first amended complaint adding three

20  additional Relief Defendants that were identified in Defendants' accounting.  (FAC (Dkt.

21  # 59).)  These new Relief Defendants, however, were not initially included in the

22  Receivership.  The SEC now seeks to add two of the Relief Defendants named in the first

ORDER- 4

1   amended complaint to the Receivership:  Dargey Development and Dargey Enterprises.

2   (Mot. at 8.)  The SEC argues that these two entities were recipients of "substantial

3   funds . . . transferred from Receivership Entities."  (*See* Rec. Int. Rep. (Dkt # 148) at 12.)

4   Dargey Development provided "management, bookkeeping and other services for

5   virtually all affiliated real estate development projects, including the [Tower and

6   Farmer's Market] Projects."  (*Id.*)  Indeed, the Receiver has reported that "[t]he fact that

7   Dargey Development is not a Receivership Entity has . . . hampered the Receiver's

8   complete understanding of the business and financial activities of the Receivership

9   Entities, in substantial part because he lacks sufficient access to certain records and key

10   employees."  (*Id.*)  Thus, the SEC argues that the Receiver needs the information

11   contained in Dargey Enterprises and Dargey Development to determine the fate of the

12   EB-5 investor funds that were transferred from Receivership entities to Dargey

13   Development and Dargey Enterprises.

14        On May 16, 2016, the SEC filed a second amended complaint adding Path

15   Farmer's Market and Dargey Holdings as additional Relief Defendants.  (*See* SAC.)  The

16   SEC now also seeks to add these two Relief Defendants to the Receivership as well.

17   (Mot. at 8.)  The SEC seeks to add these two entities because they purport to either own

18   outright or own controlling equity in title to the real estate that underlies the Tower

19   Project and the Farmer's Market Project.  (*Id.*)  Although EB-5 investors provided the

20   funds to purchase the real estate involved in the Farmer's Market Project, Mr. Dargey

21   arranged for title to be held in the name of Path Farmer's Market.  (Rec. Int. Rep. Ex. C.)

22   In addition, although EB-5 investors' funds were also used to purchase the real property

1   for the Tower Project, Defendants assert that Dargey Holdings nevertheless "owns 80%

2   of the equity in the Tower Project."  (Def. Resp to Rec. Mot. for Auth. to Market and Sell

3   Assets (Dkt. # 215) at 5.)  Dargey Holdings's assertion of an 80% ownership interest in

4   the Tower Project is based on its 80% interest in Defendant Potala Tower Seattle—the

5   entity that holds title to the underlying real property for the Tower Project.  (*See* Rec. Int.

6   Rep. Ex. C.)  Because Path Farmer's Market and Dargey Holdings claim to hold legal

7   title to the real property underlying the Tower and Farmer's Market Projects, the SEC

8   seeks to add these two entities to the Receivership.

9        Defendants oppose adding these four Relief Defendants into the Receivership.

10  (*See generally* Resp.; Def. Supp. Resp.)  Defendants argue that there is no need to place

11  Dargey Holdings or Path Farmer's Market into the Receivership because all of the assets

12  of these entities are already frozen by court order[3] and the Receiver already controls the

13  two projects at issue without adding these entities to the Receivership.  (*See* Resp. at 10.)

14  Defendants also argue that the SEC presents no evidence of any assets going missing or

15  being misappropriated since the time the Receivership was established.  (*See id.*)

16        As noted above, the court held a hearing addressing the SEC's motion on May, 19,

17  2016.  (*See* Min. Entry.)  As a result of this hearing, the court deferred ruling on the

18  SEC's motion and ordered the parties to submit additional briefing and, if appropriate,

19  evidentiary materials.  (*See* 5/24/16 Order at 8.)  In particular, the court requested that the

20  SEC provide briefing and evidentiary support regarding three topics raised in the parties'

21  _____

22       [3] (*See* Mot. at 5 n.1 (stating that Mr. Dargey's interest in Dargey Holdings "is subject to the asset freeze in the [c]ourt's Order Granting Preliminary Injunction").)

1    prior briefing and at the May 19, 2016, hearing:  (1) any evidence of asset dissipation or

2    misallocation by the four Relief Defendants at issue since the imposition of the asset

3    freeze and the creation of the Receivership; (2) why the Receiver is hampered in his

4    understanding of the business and financial activities of the Receivership Entities due to

5    the absence of the four Relief Defendants; and (3) any other evidence that would aid the

6    court in its determination.  (*Id.* at 7.)  The parties' supplemental submissions are now

7    complete (*see* SEC Supp. Br.; Gadawski Decl.; LaMarca Decl.; Def. Supp. Resp.;

8    Larsen-Bright Decl.; SEC Supp. Reply), and the court considers the SEC's motion.

9                                    **III.    ANALYSIS**

10           The Ninth Circuit counsels that "appointing a 'receiver is an extraordinary

11   equitable remedy,' which should be applied with caution."  *Canada Life Assur. Co. v.*

12   *LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (quoting *Aviation Supply Corp. v. R.S.B.I.*

13   *Aerospace, Inc.*, 999 F.2d 314, 316 (8th Cir. 1993)).  The Ninth Circuit lists seven factors

14   that the court may consider when placing a company into receivership:  (1) "whether [the

15   party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent

16   conduct or the probability of fraudulent conduct" by the defendant; (3) whether the

17   property is in imminent danger of "being lost, concealed, injured, diminished in value, or

18   squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to the

19   plaintiff by denial of the appointment would outweigh injury to the party opposing

20   appointment; (6) "the plaintiff's probable success in the action and the possibility of

21   irreparable injury to the plaintiff's interest in the property"; and (7) "whether [the]

22   plaintiff's interests sought to be protected will in fact be well-served by receivership."  *Id.*

1    Nevertheless, the Ninth Circuit recognizes "the broad nature of a court's equitable

2    powers in determining whether or not to appoint a receiver." *Id.* at 845.  Further, the

3    Ninth Circuit cautions that "there is no precise formula for determining when a receiver

4    may be appointed," and "federal courts consider a variety of factors in making this

5    determination." *Id*. at 844-45.   Indeed, the Ninth Circuit specifically "recognize[s] a

6    court's authority to appoint a receiver regardless of these factors." *Id.* at 845.  Thus, the

7    court is guided by the factors listed by the Ninth Circuit but will not necessarily consider

8    each of those factors or limit its analysis to those factors alone.

9    **1.  Evidence of the Diversion of EB-5 Investor Funds to the Four Relief**
     **Defendants at Issue**

10

11   In its supplemental briefing , the SEC asserts and points to evidence in the record

12   indicating that the four Relief Defendants at issue were the wrongful recipients of

13   ill-gotten money from EB-5 investors.  First, Path Farmer's Market is the entity that holds

14   title to the underlying real property for the Farmer's Market Project (Rec. Int. Rep. Ex.

15   C), and evidence in the record indicates that this property was purchased with funds

16   diverted from EB-5 investors (*see* SEC Resp. to Mot. to Mod. TRO (Dkt. # 44) at 5

17   (citing 9/23/15 Smyth Decl. (Dkt. # 45) Ex. 6) & Accounting Ex. B at 242)).  Further,

18   although Path Farmer's Market holds title to the underlying property, Receivership

19   Defendant Path America Farmer's Market, LP ("PAFM") is the sole member of Path

20   Farmer's Market.  (Gadawski Decl. ¶¶ 5-6.)  EB-5 investor funds from PAFM's account

21   paid all of Path Farmer's Market's expenses including Path Farmer's Market's debt to

22   Voya Investment Management.  (Dunne Decl. (Dkt. # 65) Ex. A (attaching deed of trust

1  between Path Farmer's Market, LLC and Voya); Accounting at 224, 226, 242, 244

2  (referencing payments to Voya and Newmark Realty from PAFM's account).)

3        Second, the SEC asserts and points to evidence in the record indicating that the

4  underlying real property for the Tower Project was also purchased with funds diverted

5  from EB-5 sources. (SEC Resp. to Mot. to Mod. TRO at 4-5 (citing Accounting Ex. B at

6  121, 211, 239).) In addition, Mr. Dargey transferred an 80% "ownership" interest in the

7  Potala Tower to Dargey Holdings although there is no evidence that the entity provided

8  anything in return. (*See* Gadawski Decl. ¶ 4.)

9        Similarly, evidence in the record indicates that Dargey Enterprises and its

10 successor, Dargey Development, received millions of dollars of diverted EB-5 investor

11 funds. The Receiver's forensic accountant estimates that "[a]pproximately 83% of all

12 deposits made in [Dargey] Enterprises" and "[o]ver 99% of all deposits in [Dargey]

13 Development came from PAFM and Potala Tower." (*Id.* ¶¶ 9, 13.) Even assuming that

14 the payment of "development fees" was disclosed to EB-5 investors and otherwise

15 appropriate as Defendants argue, the amount paid to Dargey Enterprises and Dargey

16 Development, and ascribed to the Farmer's Market Project, exceeded any allowable

17 amounts by nearly a million dollars. (*See id.* ¶ 7 (". . . PAFM overpaid development fees

18 in the amount of approximately $974,560.").) Similarly, calculating "development fees"

19 for the Tower Project results in an overpayment in excess of $4 million. (*Id.* ¶ 12.)

20       Defendants respond that the foregoing evidence relates solely to pre-receivership

21 diversions "which are completely irrelevant to the current motion." (Def. Supp. Resp. at

22 4.) Defendants assert that "[b]y focusing on pre-receivership events, the SEC effectively

ORDER- 9

1  concedes that it is not aware of any alleged dissipation of investor funds <u>since</u> the asset

2  freeze and receivership orders," and thus, "[t]he answer to the [c]ourt's first question is:

3  'No,' there is no evidence of dissipation or misallocation since the court initiated the

4  Receivership." (*Id.* at 5 (underlining in original).)

5        The court disagrees that the evidence the SEC presents is irrelevant.  Although the

6  SEC has not presented evidence of further dissipation of assets since the asset freeze and

7  Receivership was initiated, the SEC nevertheless substantiates by specific reference to

8  evidence in the record its prior assertions that the four entities at issue were involved in

9  either misallocation of EB-5 investor funds prior to the asset freeze or in the control or

10 ownership of assets purchased with diverted EB-5 investor funds by specific reference to

11 evidence in the record.  Further, the SEC provides evidence that the absence of these

12 entities from the Receivership is hampering the Receiver in accomplishing his primary

13 task of marshaling and preserving all Recoverable Assets.

14       Finally, although the Receiver may have accounted for investor funds in the nine

15 entities that are already in the Receivership, EB-5 investor funds placed in the additional

16 four entities at issue are not yet accounted for.  (*See* SEC Supp. Reply at 3.)  Defendants

17 assert that the SEC is asking the court to expand the Receivership "based on speculation

18 that there might be some missing investor funds somewhere."  (Def. Supp. Resp. at 5.)

19 Given, however, the evidence the SEC points to in the record of past dissipation of EB-5

20 investor funds, the court does not view as far-fetched the idea that there may be

21 additional missing investor funds in the four entities at issue.  Indeed, the Receiver

22 recently found an account for $64,002.64 that was in the name of Path Farmer's Market.

(4/29/16 Quarterly Rep. (Dkt. # 284) at 6.)  Further, based on Defendants' own Accounting, Dargey Enterprises still owes the Farmer's Market Project significant sums. (*See, e.g.*, Accounting Ex. B at 196 (indicating 10/30/12 check written on Farmer's Market account for $609,954.84 to "Potala Village" with note "Due from DE (for PV)").) As the SEC notes, these sums have yet to be paid back.  (SEC Supp. Reply at at 4-5.) The court finds that the SEC's evidence is relevant to the court's present determination and that it weighs in favor of adding the four Relief Defendants to the Receivership.

### 2.  Evidence of Lost Emails or Documents by Two of the Relief Defendants at Issue

In addition to the foregoing evidence of the diversion of EB-5 investor funds, Dargey Development and Dargey Enterprises failed to maintain certain emails for the majority of their employees.  Mr. Dargey's counsel acknowledges that in late October 2015, after the appointment of the Receiver, Dargey Development terminated its Microsoft Exchange email accounts and failed to make the necessary payments to maintain the email accounts for all employees other than Mr. Dargey, Sam Kanner, and Kami Erickson.  (LaMarca Decl. ¶¶ 2-5.)  Microsoft purged the cloud-based account information thirty days after the accounts were deactivated or terminated, and as a result those files are no longer available from Microsoft.  (*Id.*)  Further, no one from Dargey Development or its former attorneys copied the cloud-based server information that was

//

//

//

1    generated after August 24, 2015.[4]  (*Id.* ¶ 4.)  Thus, the SEC asserts that information

2    related to employee emails after August 24, 2015, has been irretrievably lost.  (*See id.*

3    ¶¶ 2-5.)

4           Defendants do not deny the foregoing chain of events, although their present

5    attorneys state they "are not aware of any facts indicating that anyone understood at the

6    time that deactivation of former employee email accounts (to avoid additional charges)

7    could result in any purging of data by Microsoft . . . ."  (Larsen-Bright Decl. ¶ 15.)

8    Defendants also insist that "[t]here is no evidence that any relevant information has been

9    lost," and that "[m]any factors suggest that no relevant information was lost."  (Def.

10   Supp. Resp. at 6-7 (bolding and capitalization omitted); *see also* Larsen-Bright Decl. ¶

11   15.)  The point, however, is that now neither the court nor the parties can be sure of this

12   fact.  Even if, as Defendants suggest, the parties may be able to retrieve from other

13   sources or locations some or all of the emails that Defendants failed to maintain, there is

14   no way to be certain that the universe of recovered emails is complete.  Further, the

15   failure to maintain the email accounts has, at a minimum, rendered recovering the emails

16   more difficult, time-consuming, and costly.  Dargey Development and Dargey

17   Enterprises have a track record of at least being careless concerning the retention of

18   relevant information.  Bringing them into the Receivership would protect against similar

19   mishaps in the future by requiring them "to preserve and turn over to the Receiver

20   _____

21      [4] The Federal Bureau of Investigation imaged employees' computers, including email
22   accounts, for several (but not all) Dargey-entity employees when it executed a search warrant on
     August 24, 2015.  (LaMarca Decl. ¶ 5.)

ORDER- 12

1  forthwith all paper and electronic information of, and/or relating to, the Receivership

2  Defendants, the Receivership Relief Defendants, and/or all Receivership Property."

3  (Rec. Ord. at 5.)

4      **3.  Evidence that the Receiver's Work is Hampered**

5      The Receiver has been assigned the duty of marshalling and preserving all

6  "Recoverable Assets" as defined in the Order Appointing Receiver.  (*Id.* at 2.)  His ability

7  to accomplish this task has been hampered by Mr. Dargey's disregard for accounting and

8  corporate formalities and the Receiver's lack of control over intertwining entities which

9  are involved in the control or ownership of Receivership Assets.  Specifically, the

10 Receiver has reported to the court as follows:

11     The interrelationships between these entities have complicated the
       Receiver's analysis.  Specifically, while the majority of the entities the
12     Receiver has identified are not part of the receivership estate, many appear
       to have been implicated in the control or ownership of Receivership Assets,
13     including the Projects, in the pre-receivership period. For example, Dargey
       Development, a non-receivership entity, provided management,
14     bookkeeping and other services for virtually all affiliated real estate
       development projects, including the Projects.  The fact that Dargey
15     Development is not a Receivership Entity has therefore hampered the
       Receiver's complete understanding of the business and financial activities
16     of the Receivership Entities, in substantial part because he lacks sufficient
       access to certain records and key employees.

17
18 (Rec. Int. Rep. at 12.)  Further, the Receiver determined that the myriad transfers to

19 Dargey Development and Dargey Enterprises could not be further traced:

20     [S]ubstantial funds were transferred from the Receivership Entities to
       Dargey Development, Dargey Enterprises, LLC, and other entities affiliated
21     with Mr. Dargey.  The structure of the relationships between the Dargey
       controlled entities means that it is presently impossible for the Receiver to
22     determine the ultimate fate of these funds after their initial transfers,
       meaning that the Receiver cannot currently determine whether there are

ORDER- 13

1    additional Receivership Assets available for recovery associated with these

2    transfers.

3    (*Id.* at 12-13.)

4         To assist him in the task of tracing and marshalling asserts, the Receiver retained a

5    forensic accountant.  (Gadawski Decl. ¶ 3.)  However, the Receiver only has access to

6    information relating to the nine Dargey-related entities that are part of the Receivership.

7    (*See* Rec. Ord. at 4-6.)  The Receiver does not have access to the four entities at issue

8    here and "has received very limited data regarding [Dargey] Holdings, [Dargey]

9    Enterprises, and [Dargey] Development."  (Gadawski Decl. ¶ 14.)  Indeed, "when the

10   receiver team visited the FBI offices to review seized documents," the team "was not

11   permitted to review or copy any of the documents" for Dargey Holdings, Dargey

12   Enterprises, or Dargey Development, because they were not part of the Receivership.

13   (*Id.*)  Thus, the Receiver's forensic accountant concludes that the "Receiver has virtually

14   no data for [Dargey] Holdings," and the "data provided to date for [Dargey] Enterprises

15   and [Dargey] Development has primarily been limited to the incomplete 'Accounting'

16   filed by Defendants on September 21, 2015."  (*Id.* ¶ 15.)[5]  As the Receiver's forensic

17   accountant states:

18        The lack of access to corporate records, complete books and accounting,
          and related source documents has caused the Receiver to incur additional

19   _____

20        [5] The individuals who prepared Defendants' Accounting conceded that it was incomplete,
     specifying that the preparers did not have access to four bank accounts related to the Farmer's
21   Market Project and did not include certain bank account information for Dargey Enterprises and
     Potala Village.  (Accounting ¶ 6; *id.* Ex. A at 6; *id.* Ex. B at 8-9.)  Further, the Accounting is
22   devoid of information related to Dargey Holdings, and it fails to identify or account for a Path
     Farmer's Market bank account that the Receiver recently located.  (SEC Supp. Reply at 3.)

ORDER- 14

1    costs to investigate the diversion of funds, hampered the Receiver's ability
2    to identify potential assets that are traceable to EB-5 investor funds, and
     hindered efforts to recover funds for the benefit of the estate.

3    (*Id.* ¶ 15.)

4        Defendants counter that the absence of the four Relief Defendants from the

5    Receivership does not hamper the Receiver because he could obtain the information he

6    seeks by conducting discovery against the FBI.  (*See* Def. Supp. Resp. at 6.)  As the SEC

7    points out, however, the FBI is not the only source of relevant information in the search

8    for assets.  The Receiver has identified multiple potential sources, including Defendants,

9    the United States Attorney's Office, the FBI, pre-receivership counsel, business affiliates

10   of Dargey entities, and other third-parties.  (4/29/16 Quarterly Rep. at 2.)  Adding the

11   four entities at issue to the Receivership will give the Receiver automatic access to all

12   their books, records, accounts, and other sources of information.  (Rec. Ord. §§ II, III,

13   IV.)  Allowing the Receiver access to all the books, records, accounts, and other

14   information under the control of the four entities at issue is more efficient and would

15   cause less harm to EB-5 investors than depleting Receivership Assets through costly

16   discovery and motions practice.  The court agrees with the SEC that it makes no sense to

17   grant the Receiver access to the records and information of the nine entities currently in

18   the Receivership, but deny the same access with respect to the four Relief Defendants at

19   issue.  The court sees no basis for differentiating these two sets of entities, and

20   Defendants offer none.

21   //

22   //

ORDER- 15

1          **4.   The Proposal to Restructure the Tower Project**

2          Defendants assert that the SEC's real motivation is "a heavy-handed attempt . . . to

3   prevent Mr. Dargey from defending himself in this case and having proper representation

4   in the pending [Department of Justice] investigation." (Def. Supp. Resp. at 9.)  The SEC

5   argues that

6          [Mr.] Dargey has used his purported ownership [in Dargey Holdings] to
           inject himself into the transaction [to restructure the Tower Project] itself.
7          If [Dargey] Holdings were made a part of the [R]eceivership, Defendant
           would retain the right to object, but he would no longer be able to insert
8          himself inappropriately into negotiations, or to unilaterally prevent the sale
           for his own personal interests, including to secure $1.8 million in attorney's
9          fees.

10  (SEC Supp. Br. at 7.)  Defendants assert that the SEC's motion "is part of an ongoing

11  effort by the SEC and the [R]eceiver to turn this pre-trial equity receivership into a

12  post-judgment liquidation of [Mr.] Dargey's two largest projects." (Def. Supp. Resp. at

13  10.)

14         The court, however, is unaware of any effort by the Receiver to "sell off" the

15  Farmer's Market Project. (*See id.*)  Indeed, in his last report, the Receiver stated that he

16  "hope[d] to file a motion in the next quarter seeking approval of his plan for completion

17  of the project." (4/29/16 Quarterly Rep. at 4; *see also* Rec. Mot. to Proceed with Bus.

18  Plan for Potala Marketplace (Dkt. # 373).)  With respect to the pending proposal to

19  restructure the Tower Project, the SEC acknowledges that "Defendant would retain the

20  right to object" to any change in the deal as presently proposed and that placing Dargey

21  Holdings within the Receivership will not prevent Mr. Dargey from getting $1.8 million

22  to pay his attorneys "because the [c]ourt ultimately has the final say on that issue,

1  regardless of whether or not Dargey Holdings is added to the Receivership." (SEC Supp.

2  Reply at 5.)  The court agrees that the issue of the proposal to restructure the Tower

3  Project and the provision of $1.8 million as a part of that deal to pay Mr. Dargey's

4  attorneys is a separate issue from the issues raised by the SEC's present motion and that it

5  is not a reason to deny the SEC's motion.[6]

6       **5.   Prejudice to Relief Defendants**

7           The SEC asserts and the court agrees that adding these Relief Defendants to The

8  Receivership will not unduly prejudice them because it will not disrupt any ongoing

9  business activities.  According to Defendants, Dargey Holdings "is a non-operating

10 holding company" that "has no employees or operations." (Larsen-Bright Decl. ¶ 3.)

11 Similarly, Defendants assert that Path Farmer's Market, LLC is "non-operational" and a

12 "'disregarded entity' for income tax and financial report purposes." (*Id*. ¶ 5.)  And

13 Dargey Enterprises and Dargey Development "no longer [have] any ongoing operations,

14 and [their] bank accounts are frozen." (*Id*. ¶¶ 6, 7.)  The court weighs the lack of

15 prejudice, as well as the foregoing evidence of asset dissipation, destruction of

16 evidence—whether inadvertent or otherwise—and hampering of the Receiver's work to

17 marshal and preserve all Recoverable Assets, and finds that Relief Defendants Dargey

18 Development, Dargey Enterprises, Path Farmer's Market, and Dargey Holdings should

19

20        _____

21        [6] The court notes that, based on the present record, it is disinclined to alter the present
proposal to restructure the Tower Project with respect to the provision of a pool of funds to
be used for Mr. Dargey's legal fees.  The court will address this issue further in its order on the
Receiver's motion for final approval of the disposition of Tower related assets. (*See* Rec. Mot.

22 for Final Approval of Disposition of Tower Assets (Dkt. # 356).)

1    be added to the Receivership for the purpose of making sure that all Recoverable Assets

2    are marshaled and preserved pending the resolution of this case.

3                            **IV.    CONCLUSION**

4         Based on the foregoing analysis, the court GRANTS the SEC's motion to place

5    Relief Defendants Dargey Development, Dargey Enterprises, Path Farmer's Market, and

6    Dargey Holdings into the existing Receivership (Dkt. # 244).

7         Dated this 15th day of July, 2016.

8

9

10   _____

11   JAMES L. ROBART
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

ORDER- 18