1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  SECURITIES AND EXCHANGE         CASE NO. C15-1350JLR
    COMMISSION,
11                                 ORDER
                Plaintiff,
12
        v.
13
    PATH AMERICA, LLC, et al.,
14
                Defendants, and
15
    POTALA SHORELINE, LLC, et al.,
16
                Relief Defendants.
17

## I.  INTRODUCTION

18

19    Before the court is the Receiver Michael A. Grassmueck's motion for final

20  approval of the terms of a proposed restructuring transaction for the commercial

21  development project ("Tower Project") located at 2116 Fourth Avenue, Seattle,

22  Washington ("Land") submitted by Binjiang Tower Corp. ("Binjiang"), PH Seattle

1  Tower I, LLC ("Molasky"), and Defendant Lobsang Dargey and certain affiliated

2  companies.  (Mot. (Dkt # 356).)  The court has reviewed the motion and the responses of

3  (1) Mr. Dargey and Relief Defendants Dargey Development, LLC, Dargey Enterprises,

4  LLC, Path Othello, LLC, Path Farmer's Market, LLC, and Dargey Holdings, LLC

5  (collectively, "Defendants") (Def. Resp. (Dkt. # 365); (2) certain EB-5 investors in the

6  Tower Project (EB-5 Resp. (Dkt. # 366));  and (3) Plaintiff Securities and Exchange

7  Commission ("SEC") (SEC Resp. (Dkt. # 367)).  The court has also reviewed other

8  relevant portions of the record and the applicable law.  Being fully advised, the court

9  GRANTS the motion with certain modifications as more fully described below.

## II.    BACKGROUND

11      The Receiver was appointed pursuant to the Order Appointing Receiver entered on

12  October 22, 2015.  (Rec. Ord. (Dkt. # 88).)  Pursuant to the terms of the Appointment

13  Order, the court took "exclusive jurisdiction and possession of the assets, of whatever

14  kind and wherever situated," of the Receivership Entities, which assets include the Tower

15  Project and related interests (collectively, the "Tower Project Assets").  (*Id.* ¶ 2.)  The

16  Appointment Order further authorized the Receiver to take immediate possession of all

17  real and personal property of the Receivership Entities, wherever located, and to engage

18  brokers to sell or dispose of these assets, "in the manner the Receiver deems most

19  beneficial to the Receivership Estate" without further order from the court, subject to

20  procedures that the court may establish to administer any planned disposition.  (*Id.* ¶¶ 16-

21  17, 33-35.)

22

ORDER- 2

1        The Tower Project is a planned commercial development in downtown Seattle

2   intended to be a mixed-use facility comprised of residential apartment units, a hotel, and

3   other retail facilities.  (6/23/16 Grassmueck Decl. (Dkt. # 357) ¶ 3.)  The land for the

4   Tower Project development was acquired in 2013 by Tower LLC, whose members are

5   Dargey Holdings and Binjiang.  (*Id.*)

6        Based on his review of the financial condition of the Tower Project, the Receiver

7   determined, in his reasonable business judgment, that completion of the development

8   would not be feasible absent a source of alternative funding, and that it would not be cost

9   effective or appropriate for him to attempt to raise equity in the market to complete the

10  development.  (*See generally* 2/4/16 Mot. (Dkt. # 183).)  Thus, on February 4, 2016, the

11  Receiver filed a motion recommending that the Tower Project Assets be sold out of

12  receivership, and sought authorization from the court to begin the process for marketing

13  the Tower Project for sale.  (*Id.*)  Following the submission of substantial further briefing

14  by interested parties and the Receiver regarding the Receiver's recommendation, and

15  after having conducted a hearing on April 18, 2016, the court entered an order on April

16  20, 2016, granting the Receiver's request to market the Tower Project Assets for sale.

17  (*See* 4/20/16 Order (Dkt. # 282).)  The April 20, 2016, order directed the Receiver to

18  solicit proposals from prospective purchasers for both an "AS-IS, WHERE-IS" sale of

19  the Land, and proposals that contemplate a restructuring of the Tower Project where the

20  project would be completed in a manner consistent with EB-5 investors' goals.  (*See*

21  *generally id.*)

22

1    After having solicited and evaluated a number of proposals, on May 13, 2016, the

2    Receiver filed a memorandum providing the court with his recommendations for the: (1)

3    best offer proposal for sale of the Land only; (2) the best proposal for restructuring of the

4    Tower Project; and (3) the best overall proposal. (5/13/16 Rec. Mem. (Dkt. # 303).) As

5    described in the Receiver's memorandum, the Receiver recommended the proposal

6    submitted by Binjiang and PH, LLC (a Molasky affiliate) to acquire the Tower Project

7    Assets for continued development of the Tower Project ("Binjiang/Molasky Proposal") as

8    the best overall proposal. (*Id*.)

9    Following further briefing by interested parties and the Receiver, and after

10   conducting a hearing on the matter on May 19, 2016, the court entered an Order on May

11   20, 2016 ("Preliminary Approval Order") approving the Receiver's recommendation to

12   select the Binjiang/Molasky Proposal. (Prelim. App. Order (Dkt. # 336).) The

13   Preliminary Approval Order further established relevant deadlines for final approval and

14   closing of the transaction contemplated by the Binjiang/Molasky Proposal (the

15   "Restructuring Transaction"). (*See id.*) Among these deadlines was a June 23, 2016,

16   deadline for the Receiver to submit this Motion for the court to consider and approve the

17   final terms of the Restructuring Transaction, including (i) the fully executed deal

18   documents memorializing the agreement between the parties, (ii) a form of proposed

19   notice to EB-5 investors of the Restructuring Transaction and their choice to opt-in or

20   opt-out of the transaction ("Notice to Investors"), and (iii) the method(s) by which the

21   Notice to Investors will be delivered. (*Id*.) The Preliminary Approval Order also

22   requires the Notice to Investors to be sent by no later than July 25, 2016 and investor

1   responses to be returned to the Receiver by no later than August 24, 2016, with the

2   Restructuring Transaction to close on or before August 31, 2016.  (*Id*.)

## III.   ANALYSIS

### A.  Legal Standard

5   Federal courts have inherent equitable authority to issue a variety of ancillary

6   relief measures in actions brought by the SEC to enforce the federal securities laws.  *SEC*

7   *v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).  "The power of a district court to impose

8   a receivership or grant other forms of ancillary relief does not in the first instance depend

9   on a statutory grant of power from the securities laws.  Rather, the authority derives from

10   the inherent power of a court of equity to fashion effective relief."  *Id*.  The "primary

11   purpose of equity receiverships is to promote orderly and efficient administration of the

12   estate by the district court for the benefit of creditors."  *SEC v. Hardy*, 803 F.2d 1034,

13   1038 (9th Cir. 1986).

14   District courts have the broad power of a court of equity to determine the

15   appropriate action in the administration and supervision of an equity receivership.  *See*

16   *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) ("[A] district court's

17   power to supervise an equity receivership and to determine the appropriate action to be

18   taken in the administration of the receivership is extremely broad.") (quoting *Hardy*, 803

19   F.2d at 1037); *see also CFTC v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir.

20   1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we

21   generally uphold reasonable procedures instituted by the district court that serve th[e]

22   purpose' of orderly and efficient administration of the receivership for the benefit of

1  creditors.") (quoting *Hardy*, 803 F.2d at 1037-38).  In the estate administration context,

2  courts are deferential to the business judgment of bankruptcy trustees, receivers, and

3  similar estate custodians.  *See, e.g.*, *Bennett v. Williams*, 892 F.2d 822, 824 (9th Cir.

4  1989); *Sw. Media, Inc. v. Rau*, 708 F.2d 419, 425 (9th Cir. 1983).

5        The court's powers to administer the receivership and, specifically, to sell

6  receivership assets, are not limited by the terms of private contracts.  The court's

7  authority over the assets of a receivership estate derives from the court's inherent power

8  to exercise jurisdiction over assets taken into the receivership, rather than from

9  underlying contracts.  *SEC  v. Am. Capital Invs., Inc*., 98 F.3d 1133, 1143-45 (9th Cir.

10  1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S.

11  83 (1998) (approving sale of property over limited partners' objections based on court's

12  equitable powers, irrespective of state law or contract rights).  Accordingly, the court has

13  broad equitable powers and discretion to grant this motion and authorize and approve the

14  terms of the Restructuring Transaction.

15        **B.  Defendants' Response**

16        Although Defendants take issue with some of the statements of the Receiver in his

17  motion, they do not object to the proposed Restructuring Transaction.  (Def. Resp. at 1.)

18  Indeed, "Defendants join with the Receiver in moving the [c]ourt for the relief identified

19  in the proposed Order Granting Final Approval of Disposition of Potala Tower Related

20  Assets (ECF No. 356-1)."  (*Id.*)

21  //

22  //

ORDER- 6

1  **C.  EB-5 Investors' Response**

2      A group of approximately 65 investors in the Tower Project whose funds remain

3  invested ("EB-5 Investors") filed a response to the Receiver's motion.  (*See* EB-5 Resp.

4  at 1.)  EB-5 Investors "generally support the Binjiang/Molasky Proposal and ask that the

5  Receiver's [m]otion be granted."  (*Id.* at 2.)  EB-5 Investors, however, raise three

6  concerns about the Restructuring Transaction, and the court addresses each in turn.

7      **1.   Continued Pursuit of the USCIS Appeal**

8      EB-5 investors state that they believe that the Binjiang/Molasky Proposal or the

9  proposed Restructuring Transaction "presents the best option" to maximize the potential

10  that they will achieve the EB-5 immigration benefit they originally sought when investing

11  in the Tower Project.  (EB-5 Resp. at 3.)  They ask the court, however, to "explicitly

12  order Molasky to do everything in its power to give the appeal the best possible chance of

13  succeeding."  (*Id.*)  They specifically ask the court to require Molasky to:  (a) "diligently

14  pursue the [United States Citizenship and Immigration Services ("USCIS")] appeal with

15  the continued assistance of competent, experienced EB-5 counsel; (b) supplement the

16  USCIS appeal as necessary with all documentation showing that the Tower Project is

17  going forward in a manner consistent with its original business plan; and (c) pursue all

18  other available avenues of appeal should the pending appeal be denied in the first

19  instance."  (*Id.*)

20      The Receiver responds that the existing Master Agreement, which has been agreed

21  to and fully executed by the parties to the transaction, already includes terms that address

22  EB-5 Investors' concerns.  (Reply (Dkt. # 370) at 1.)  Specifically, the Master Agreement

1   provides that Molasky would be "appointed to implement and execute the remaining

2   design and construction of the [Tower] Project in a manner consistent with the original

3   offering . . . as approved by the USCIS."  (Master Agreement (Dkt. # 357-2) at 23.)  The

4   Master Agreement further provides that "Molasky, or its designee, shall be responsible

5   for continued prosecution of the Appeal after the Closing."  (*Id.* at 31.)  Given these

6   terms, the Receiver believes, and the court agrees, that EB-5 Investors' concerns are

7   adequately addressed by the terms of the Master Agreement and that no revisions to the

8   documents are necessary.

9       **2.   Memorializing the Scope of the Opt-Out Release**

10      EB-5 Investors request that the terms of the release for EB-5 investors who choose

11  to opt-out of the Restructuring Transaction be further clarified in the form "Release of

12  Claims by EB-5 Investors."  (EB-5 Resp. at 5.)  In particular, EB-5 investors request

13  clarification that:  (1) the opting-out investors will retain a $250,000.00 claim against the

14  Receivership estate, and (2) the release for opting-out investors will not include a waiver

15  of claims for consequential damages against the Receivership estate.  (*Id.*)

16      The Receiver does not object to the requested clarifications.  (Reply at 3.)

17  However, at the time he filed his reply memorandum, he had not yet obtained the parties'

18  agreement to the proposed language.  (*Id.*)  Given the time constraints, the Receiver

19  suggests that the following language be added to the end of paragraph 2 of the Proposed

20  Order (Dkt. # 356-1):  "If and to the extent the Receiver, Binjiang, Molasky, and the

21  Dargey Parties agree in writing to revise the Notice to Investors (defined below) to

22  narrow the scope of the release attached thereto as Exhibit E, such revised Disclosure

1   Document is hereby APPROVED." (Reply at 3.) The Receiver "believes that the

2   foregoing language provides the parties the opportunity to address the EB-5 Investors'

3   concern without delaying the [proposed Restructuring Transaction]." (*Id.*) The court

4   agrees and so orders the foregoing alteration.

5     **3.  Addition of a "Reasonable Efforts" Substitution and Refund Provision**

6     EB-5 Investors propose adding a provision to the Master Agreement which

7   generally provides that if an individual investor's immigration petition is denied for

8   reasons unrelated to the Tower Project's EB-5 status, the project would use "reasonable

9   efforts" to find a substitute EB-5 investor and issue a refund of the denied investor's

10  investment principle. (EB-5 Resp. at 4.) The Receiver takes no position on the substance

11  of EB-5 Investors' request. (Reply at 2.) However, he has reservations regarding the

12  addition of such a term to the Restructuring Transaction during the final stages of this

13  complex transaction, because he believes that addition may "create unnecessary obstacles

14  to closing." (*Id.*) He warns about the time and expense required to renegotiate and

15  document the terms of the provision and the uncertainty of future enforcement. (*Id.*)

16  Finally, he confirms that the other parties to the Restructuring Transaction have not

17  agreed to this request. (*Id.*)

18    Given the fact that EB-5 Investors are generally in favor of the Restructuring

19  Transaction, and that both they and the court believe it offers "them the best chance of

20  obtaining conditional permanent resident status" (*see* EB-5 Resp. at 2), the court is

21  unwilling to imperil the closing of the Restructuring Transaction over this request. If the

22  Restructuring Transaction fails to close, EB-5 Investors risk losing whatever chance the

ORDER- 9

1 Restructuring Transaction offers with respect to their immigration goals.  Accordingly,

2 the court agrees with the Receiver that this request from EB-5 Investors should be denied,

3 and the court denies this request.

4 **D.  The SEC's Response**

5 The SEC filed a response to the Receiver's motion stating that it "does not oppose

6 the Receiver's proposed disposition of the assets."  (SEC Resp. at 1.)  However, the SEC

7 objects "to [Mr.] Dargey's injection of himself into the transaction in order to secure

8 attorney's fees."  (*Id.*)  The SEC's position is that "[r]egardless whether the [c]ourt

9 determines to approve the Receiver's [m]otion, [Mr.] Dargey should be required to move

10 the [c]ourt and make a proper showing for the relief he seeks from the [c]ourt's freeze on

11 his assets."  (*Id.*)

12 The court notes that without Mr. Dargey's and his attorneys' "injection" into the

13 transaction, any hope that EB-5 Investors had of fulfilling their EB-5 immigration goals

14 would have been permanently lost.  Without Mr. Dargey's persistence, the Tower Project

15 would have been sold from the Receivership on an "AS IS, WHERE IS" basis.  The court

16 is, of course, mindful of the SEC's allegations that it was Mr. Dargey's fraudulent

17 behavior that imperiled the EB-5 investors' immigration goals in the first place, as well

18 as the evidence the SEC has presented so far in support of those allegations.

19 Nevertheless, at this point in the litigation, the SEC's allegations remain just that.  The

20 SEC's claims against Mr. Dargey have not been proven in a court of law.  Thus, Mr.

21 Dargey's willingness to voluntarily and without objection relinquish his asserted

22 ownership in the Tower Project represents a benefit to both the Receivership estate and to

1   EB-5 Investors who support the proposed Restructuring Transaction.  There is no doubt

2   that Mr. Dargey will incur substantial legal fees in defending himself with respect to the

3   SEC's allegations.  Further, the court is reassured that the funds at issue will be use

4   appropriately for legal expenses because the funds will be deposited into his attorney's

5   trust account and thus will not be placed directly under his control.  Finally, neither the

6   Receiver, nor EB-5 Investors have objected to the fact that the Restructuring Transaction

7   provides for $1.8 million to be set aside for payment of Mr. Dargey's legal fees.  In light

8   of the foregoing, the court rejects the SEC's objection.

9                          **IV.    CONCLUSION**

10          Based on the foregoing analysis, the court GRANTS the Receiver's motion for

11  final approval of the disposition of the Potala Tower related assets, subject to the

12  alteration set forth in section III.C.2 above.  The court will enter the Receiver's proposed

13  order (Dkt. # 356-1) with the alteration referenced in section III.C.2 above interlineated

14  therein.

15          Dated this 15th day of July, 2016.

16

17

18                                              _____

19                                              JAMES L. ROBART
                                                United States District Judge

20

21

22

ORDER- 11