UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>           v.<br><br>PATH AMERICA, LLC, et al.,<br><br>                  Defendants, and<br><br>POTALA SHORELINE, LLC, et al.,<br><br>                  Relief Defendants. | CASE NO. C15-1350JLR<br><br>ORDER GRANTING MOTION REGARDING CLAIMS PROCESS |

## I.      INTRODUCTION

Before the court is Receiver Michael A. Grassmueck's ("the Receiver") motion for an order (1) approving the Receiver's proposed claim form for claims against the

ORDER- 1

Receivership Entities[1] other than claims of EB-5 investors on their EB-5 investments; (2) setting a claims bar date for the submission of claims; and (3) establishing summary procedures for resolving disputed claims. (Mot. (Dkt. # 385).) Defendant Lobsang Dargey and Relief Defendant Path Othello, LLC (collectively, "Dargey") filed a response to the Receiver's motion in which they state that they "do[] not oppose the idea of a 'claims process,'" but object to the proposed form of notice and other details in the Receiver's motion and proposed claims process. (Resp. (Dkt. # 388) at 1-2.) Plaintiff Securities and Exchange Commission ("SEC") did not file a response to the Receiver's motion.[2] (*See generally* Dkt.) The Receiver filed a reply memorandum in support of his motion (Reply (Dkt. # 392)), along with a revised claim form (RCF (Dkt. # 392-1)) and a revised notice for publication (RNP (Dkt. # 392-2)).

The court has reviewed the motion, all submissions filed in support of the motion and in opposition thereto, the relevant portions of the record, and the applicable law.

---

[1] Defendants Path America, LLC, Path America SnoCo, LLC, Path America Farmer's Market, LP, Path America KingCo, LLC, Path America Tower, LP, Path Tower Seattle, LP, and Potala Tower Seattle, LLC, as well as Relief Defendants Potala Shoreline, LLC, Potala Village Kirkland, LLC, Dargey Holding, LLC, Dargey Enterprises, LLC, Darey Development, LLC, and Path Farmer's Market, LLC (collectively, "Receivership Entities"). (*See* Rec. Ord. (Dkt. # 88) at 2; Ord. Mod. Rec. (Dkt. # 375) at 18.)

[2] Under Local Rule 7(b)(2), if a party fails to file papers in opposition to a motion, the court may consider such failure to be an admission by that party that the motion has merit. *See* Local Rules W.D. Wash. LCR 7(b)(2).

Being fully advised,[3] the court GRANTS the Receiver's motion as revised by the Receiver's submissions in reply.

## II.   BACKGROUND

### A.   Procedural Background and Summary of the SEC's Claims

The SEC filed this action on August 24, 2015, and sought a temporary restraining order ("TRO") against Mr. Dargey and nine of the corporate entities that he controls: Defendants (1) Path America, LLC, (2) Path America SnoCo, LLC, (3) Path America Farmer's Market, LP, (4) Path America KingCo, LLC, (5) Path America Tower, LP, (6) Path Tower Seattle, LP, (7) Potala Tower Seattle, LLC, and Relief Defendants (8) Potala Shoreline, LLC, and (9) Potala Village Kirkland, LLC.  (Compl. (Dkt. # 1); TRO Mot. (Dkt. # 2).)  The court entered a TRO that same day (TRO (Dkt. # 9)) and converted the TRO into a preliminary injunction on October 6, 2015 (PI (Dkt. # 68)).

The SEC alleges that Defendants exploited a federal visa program to defraud investors seeking financial returns and a path to United States residency.  (SAC (Dkt.

---

[3] Dargey requests oral argument on the Receiver's motion. (*See* Resp. at title page.)  The court, however, does not consider oral argument to be necessary.  *See* Local Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").  The parties had a full opportunity to present their arguments and proposals to the court in writing, and the Receiver modified certain aspects of his proposal following Dargey's response. (*See generally* Reply.)  Oral argument is not necessary where the non-moving party suffers no prejudice.  *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984). "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*). "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court." *Id*.  Here, the issues have been thoroughly briefed by the parties and oral argument would not assist the court.  Accordingly, the court declines to hear oral argument on the Receiver's motion.

# 307) ¶ 1.) Defendants allegedly raised at least $125 million through the sale of securities to 250 investors, along with at least $11 million in additional fees. (*Id.*) The SEC alleges that Defendants solicited investments predominantly from Chinese citizens, claiming the investments would qualify under the EB-5 Program administered by United States Citizenship and Immigration Services ("USCIS"). (*Id.* ¶ 2.) The EB-5 Program provides that foreign nationals may qualify for United States residency if they make a qualified investment of $500,000.00 or more in a specified project that is determined to have created or preserved at least 10 jobs in the United States. (*See id.*) The SEC further alleges that, using the lure of the EB-5 Program and the promise of investment returns, Defendants targeted Chinese nationals in a scheme to sell securities to finance two real estate development projects: (1) a skyscraper in downtown Seattle ("the Tower Project"), and (2) a mixed-use commercial and residential development, including a farmer's market, in Everett, Washington ("the Farmer's Market Project"). (*Id.* ¶ 3.) The SEC alleges that rather than use the investors' money solely for these two projects, Mr. Dargey misappropriated or diverted millions of dollars from these investors for other projects or for his personal use. (*Id.*)

On September 21, 2015, in response to the court's TRO, Defendants filed an accounting with the court. (Accounting (Dkt. ## 31-32).) On September 22, 2015, the SEC moved to appoint a receiver for nine Dargey-related corporate entities named in the initial complaint. (Rec. Mot. (Dkt. # 38).) On October 22, 2015, the court granted the SEC's motion. (Rec. Ord.)

1    On October 2, 2015, the SEC filed an amended complaint adding three Relief
2 Defendants that were identified in Defendants' accounting. (FAC (Dkt. # 59).) On
3 March 10, 2016, the SEC moved to (1) file a second amended complaint adding two
4 more Relief Defendants to its allegations and (2) modify the Receivership order to add
5 four Relief Defendants to the Receivership. (Mot. to Amend (Dkt. # 244).) The court
6 granted the SEC's motion to file a second amended complaint on May 12, 2016.
7 (5/12/16 Ord. (Dkt. # 289).) The SEC filed its second amended complaint on May 16,
8 2016. (SAC.) On July 15, 2016, the court granted the SEC's motion to modify the initial
9 Receivership order to add four more entities to the Receivership. (Ord. Mod. Rec. (Dkt.
10 # 375).)
11   On November 17, 2015, the Receiver filed his initial report describing the general
12 status of the Receivership Entities, the EB-5 investment program, the Receivership
13 Entities' business and financial activities, major assets, and investor relations. (1st
14 Report (Dkt. # 148).) On January 20, 2016, the Receiver submitted a Recovery Plan
15 setting out his proposed courses of action as to the assets in the Receivership Estate.
16 (Recovery Plan (Dkt. # 170).) The Receiver also filed a series of Quarterly Status
17 Reports that discuss the known EB-5 investors' claims, identify several large known
18 claims, and describe several million dollars of non-investors' claims about which the
19 Receiver has become aware. (*See* 2/10/16 Quarterly Rep. (Dkt. # 193); 4/29/16 Quarterly
20 Rep. (Dkt. # 284); 7/28/16 Quarterly Rep. (Dkt. # 384).)
21 //
22 //

ORDER- 5

### B. The Proposed Claims Process

Presently, the Receiver brings a motion proposing a claims process that would solicit, review, and determine all claims against the Receivership Estate, except for EB-5 investment claims. The Receiver asserts that deferring claims arising from EB-5 investments to a second claims process, if necessary, would be more efficient than considering the EB-5 claims now. (Mot. at 3.) The Receiver reasons that if the present sale of the Tower Project is completed (*see* Orders Approving Sale (Dkt. ## 376-77); *see also* 8/29/16 Order (Dkt. # 414) (modifying previous orders approving final disposition of the Tower Project)), a significant number of EB-5 investors will maintain their investments in the Tower Project, which would reduce the overall number of EB-5 investor claims against the Receivership. (Mot. at 3.) In addition, the sale of other assets, if such sales occur, may also affect the overall number of EB-5 investment claims. (*Id.*) Finally, the Receiver believes that he can readily ascertain the scope of the EB-5 investments at issue because the EB-5 programs generally involved standardized investments of $500,000.00, and the Receiver believes that the records identifying these investors are generally reliable. (*Id.*) Thus, the Receiver believes it would more efficient to defer the claims process for these investors. (*Id.*)

Along with his original motion, the Receiver filed a proposed claims form. (*See* Mot. at 4; PCF (Dkt. # 385-1).) However, following receipt of Dargey's opposition to his motion, the Receiver filed a revised claims form. (*See* RCF.) The Receiver proposes that claimants be permitted to submit their claims by regular mail or email. (Mot. at 4.) The Receiver defines a claim as follows:

> 'Claim' is meant to be all-inclusive, encompassing any claim that a person is owed money by any of the Receivership Entities and their subsidiaries and affiliates, asserts any interest in any of the companies or in any of its assets or in any claim against any of the companies or any entity under its control, or asserts any claim of any sort against any of the companies whether such claim is based upon contract, tort, contribution, indemnity, reimbursement, subrogation theories or other legal or equitable theory.

(*Id.* at 4 n.1.)

The Receiver also asks the court to set a "claims bar date" by which "all claims against the Receivership Entities other than claims by EB-5 investors arising from their EB-5 investments" not submitted to the Receivership "will be barred." (*Id.*) Setting such a date is necessary so that the court and the Receiver "can be confident that the universe and magnitude of possible claims is known." (*Id.* at 5.) The Receiver requests that the court set the claims bar date on "the first business day 60 days after the Receiver first publishe[s] notice after receipt of an order on this [m]otion." (*Id.*) The Receiver proposes that any party who fails to file a claims form by the claims bar date should (1) "not . . . be treated as holding a claim against the Receivership Estate," (2) "be barred, estopped[,] and enjoined from asserting any claim against or interest in the Receivership Entities or the Receivership Estate," and (3) "not receive any distribution or interest on account of such claim." (*Id.* at 6.)

With his original motion, the Receiver also filed a proposed notice of publication to investors. (*See id.* at 5; PNP (Dkt. # 385-2).) However, following receipt of Dargey's opposition to his motion, the Receiver filed a revised notice of publication. (*See* RNP.) The Receiver proposes mailing the claim form to potential claimants that he has identified in the records of the Receivership Entities. (Mot. at 5.) The Receiver also

ORDER- 7

proposes posting notice of the claims bar date and the claim form on the Receiver's PATH America Receivership website. (*Id.*) Finally, the Receiver proposes publishing the notice regarding the claims bar date in the legal notices section of the Seattle Daily Journal of Commerce and the Everett Herald at least two times: to initiate the 60-day claims period and again 30 days later. (*Id.*)

Finally, the Receiver proposes that any claim disputes that cannot be consensually resolved be determined by the court using summary proceedings. (*Id.* at 6.) The Receiver proposes that any differences between the Receiver and any claimant concerning an asserted claim will be submitted to the court by motion. (*Id.*) If necessary, the claimant and the Receiver may seek court permission for discovery, a settlement conference, a briefing schedule, and any other procedures deemed appropriate by the court. (*Id.* at 7.)

**C. Dargey's Response**

Dargey states that he "does not oppose the idea of a 'claims process'," but is concerned that the process and notice proposed by the Receiver "will create confusion regarding who should file a claim and what filing a claim means in this pre-trial, equity receivership." (Resp. at 1.) Dargey argues that people and entities "who hold an ownership interest in the various receivership entities and properties should <u>not</u> file a claim at this time." (*Id.* (emphasis in original; footnote omitted).) Dargey argues that the Receiver's proposed notice and process will "cause everyone with an equity interest in a Dargey-related project to think that those projects are being liquidated, and that they must file a claim or be 'forever barred' from making a claim." (*Id.*) Dargey asserts that the

Receiver's notice "is sure to cause confusion and panic among people who have an ownership interest in one of the receivership properties." (*Id.*)

Dargey asserts that the purpose of the claims process should be to identify third-party claims and not investor claims or ownership claims, which he argues are contingent on the outcome of the trial. (*Id.* at 2.) Dargey asserts that the Receivership Estate is comprised of ten different receivership entities and four different real estate projects, which are partially owned by persons or entities other than Dargey and who are not necessarily parties to this suit. (*Id.* at 3-4.) Dargey argues that the "main problem with the [R]eceiver's [n]otice is that it suggests that the [R]eceiver intends to summarily liquidate all of those legal interests, which would be a violation of due process (as those persons are not parties to this action) and of the rights of defendants in this pretrial setting." (*Id.* at 4.)

Dargey also objects to the Receiver's proposed notice on the ground that it "does not define the term 'claim,' and thus, does not indicate whether a claim should be filed by someone who has a partnership interest, security interest, leasehold interest, [limited liability company] membership interest[,] or other interest in one of the many entities and assets." (*Id.*) He asserts that the definition of claim used by the Receiver is overly broad. (*See id.* at 4-5.) Dargey argues that, under the Receiver's definition of "claim," even he would have to file a claim as to all of his interests in the various companies and their assets or risk having all of his ownership interests "wiped out through a 'summary' claims process without a trial on the merits of the SEC's allegations." (*Id.* at 5.) He also asserts that using the Receiver's "all-inclusive" definition of claim will create collateral

litigation and lead to absurd results. (*Id.*) For example, he argues that the Receiver will need to file claims on behalf of various Receivership Entities against other Receivership Entities. (*Id.*) Dargey argues that the only portion of the Receiver's definition of claim that makes sense in this pre-trial context is the reference to "any claim that a person is owed money by any of the Receivership Entities . . . ." (*Id.* (citing Mot. at 4 n.1).) Dargey argues that these "third-party, non-investor claims . . . should be identified through this claims process." (*Id.* at 6.)

In addition to the foregoing objections, Dargey raises a litany of other issues on which he seeks clarification. He asserts that the claims process should involve only the identification of claims and not their payment. (*Id.*) He argues that any payment issues should be addressed separately. (*Id.*) In particular, he argues that to the extent that the payment of any claim depends on the outcome of the SEC's claims in this matter, those claims cannot be adjudicated or paid as part of the Receivership prior to trial or other resolution of the SEC's claims. (*Id.*)

He also asserts that the Receiver should not be authorized to "allow" or disallow" any claim, but rather should be required to submit all proposed dispositions of any claim to the court for a decision upon a properly noted motion. (*Id.* at 6.) He also argues that the Receiver should also be required to submit all proposed claim compromises to the court for its approval upon a properly noted motion. (*Id.* at 6-7.) He contends that all interested parties should have an opportunity to respond and/or object to the Receiver's proposed disposition of any claim. (*Id.* at 6-7.) Finally, he contends that the Receiver

should not be making any claims on behalf of any Receivership Entities or anyone else in this claims process. (*Id.* at 7.)

**C. The Receiver's Reply**

In reply to Dargey's opposition, the Receiver argues that his proposal avoids confusion in its simplicity: "if you think you have any type of claim, submit it." (Reply at 1.) He contends that his process actually avoids confusion for claimants who might mistakenly characterize their claim as one of ownership when it is not. (*Id.*) He asserts that his claims process gives the Receiver and the court a better understanding of the universe of claims, while not mandating any plan of distribution. (*Id.*)

The Receiver, however, does propose certain modifications to his original proposal in response to some of Dargey's concerns. (*Id.* at 1-3.) He proposes a revision to his original claim form that provides a category for "Owner, partner, member, equity, or other non-EB-5 investment interest." (*Id.* at 1.) In addition, the General Instructions have been revised to provide a summary of the claims process itself, including that the Receiver will review claims and may seek clarification from the claimant, that the Receiver's objections to or compromise of claims will be presented to the court, and that claimants will have an opportunity to respond. (*Id.* at 2.) The General Instructions also state that the claims gathering and review process does not mean that there will be a distribution.[4] (*Id.*)

---

[4] The Receiver also revised the Claims Form, General Instructions, and Notice for Publication to reflect that the court added new Relief Defendants to the Receivership after the Receiver initially filed his present motion. (*See* Reply at 2.)

Finally, the Receiver provides several other clarifications in his reply to address Dargey's concerns. As stated in his original motion, the Receiver notes that the proposed claims process does not address disposition of the assets or restructuring, and although the claims process should facilitate future distributions, if ordered by the court, the claims process itself does not establish a distribution plan. (*Id.* at 5; *see* Mot. at 1.) The Receiver also clarifies that his omnibus claims motion to the court will seek approval for both undisputed claims that the Receiver allows and compromised claims. (Reply at 5.) Thus, Defendants and other interested parties will have an opportunity to respond or object to the Receiver's proposed disposition of both allowed and compromised claims. (*See id.*) Finally, the Receiver also clarifies that he has no intent to file claims between the Receivership Entities themselves as a part of this claims process. (*Id.*)

### III. ANALYSIS

The Ninth Circuit has stated that two basic principles emerge from cases involving equitable receiverships, many of which involve SEC receiverships: (1) a district court's power to supervise and determine the appropriate action to be taken in the administration of the receivership is extremely broad, and (2) a primary purpose of equity receiverships is to promote the orderly and efficient administration of the estate for the benefit of creditors. *SEC v. Hardy*, 803 F.2d at 1034, 1037-38 (9th Cir. 1986); *see also SEC v. Capial Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) ("A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." (quoting *Hardy*, 803 F.2d at 1037)); *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978) ("[T]he district

court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."). Of course, the court recognizes that its broad discretion is not limitless. The court must carefully balance competing concerns particularly when authorizing a receiver to liquidate rather than to just manage receivership assets. *Lincoln Thrift Ass'n*, 577 F.2d at 606, 609 (stating that "liquidation of a corporation under a securities receivership may more properly be the subject of a bankruptcy proceeding"). Nevertheless, "[f]or the claims of nonparties to property claimed by receivers, summary proceedings satisfy due process so long as there is adequate notice and opportunity to be heard." *SEC v. Am. Capital Invs.*, 98 F.3d 1133, 1146 (9th Cir. 1996).

In this instance, the court finds that the Receiver's plan for a claim form and process, as modified in response to Dargey's filing, satisfy due process concerns with respect to third-party claimants and Dargey. The Receiver will present disputed claims to the court with opportunity for the claimant or any party to this proceeding to be heard. (Reply at 6.) If, for example, Dargey believes that a particular claim should not be resolved prior to trial or other resolution of this case because the claim's validity depends on the outcome of this case, he can raise this objection with the court at the time the Receiver presents the claim. Further, third-party claimants can seek court permission to take discovery, set briefing schedules, conduct settlement proceedings, and engage in other procedures that the court deems appropriate. (*Id.* at 7.) With respect to the Receivership Entities, the Receiver clarified in his reply memorandum that he does not intend to file claims between the Receivership Entities themselves. (*Id.* at 5.) Finally, the Receiver also clarified that his current claims process proposal is not a distribution

plan. (*Id*; *see* Mot. at 1.) Thus, the court concludes that the Receiver's claims process proposal, as modified in response to the concerns raised by Dargey, satisfies due process concerns and may proceed.

## IV.    CONCLUSION

Based on the foregoing analysis and authorities, the court GRANTS the Receiver's claims process motion (Dkt. # 385) and APPROVES the claim form and instructions attached as Exhibit A to the Receiver's Reply (Dkt. # 392-1) and the form of notice for publication attached as Exhibit B to the Receiver's Reply (Dkt. # 392-2). The court further ORDERS that the deadline to submit claims, other than the claims of EB-5 investors arising from their EB-5 investments, shall be the first business day that is at least 60 days after the Receiver first publishes notice of the claims bar ("Claims Bar Date"). The court ORDERS that the Receiver shall calculate and include the Claims Bar Date in all notices and inform the court of the Claims Bar Date following his calculation of the date. Unless otherwise ordered by the court, any claim against the Receivership that is submitted after the Claims Bar Date will be barred, except for claims of EB-5 investors arising from their EB-5 investments.

Dated this 30th day of August, 2016.

JAMES L. ROBART
United States District Judge

ORDER- 14