The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:15-cv-01350-JLR |
| Plaintiff, | DECLARATION OF DAVID R. ZARO IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF RECOMMENDED DISTRIBUTION PLAN AND AUTHORIZATION TO PROCEED WITH CLOSING TASKS |
| v. | |
| PATH AMERICA, LLC; PATH AMERICA SNOCO LLC; PATH AMERICA FARMER'S MARKET, LP; PATH AMERICA KINGCO LLC; PATH AMERICA TOWER, LP; PATH TOWER SEATTLE, LP; POTALA TOWER SEATTLE, LLC; and LOBSANG DARGEY, | NOTED ON MOTION CALENDAR: NOVEMBER 16, 2018 |
| Defendants, and, | |
| POTALA SHORELINE, LLC; POTALA VILLAGE KIRKLAND, LLC; DARGEY DEVELOPMENT, LLC; DARGEY ENTERPRISES, LLC; and PATH OTHELLO, LLC,, | |
| Relief Defendants. | |

DECLARATION OF DAVID R. ZARO IN SUPPORT OF
RECEIVER'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN
Case No. 2:15-cv-01350-JLR
1141340.01

-1-

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

1    <u>DECLARATION OF DAVID R. ZARO</u>

2    I, David R. Zaro, declare as follows:

3    1.      I am an attorney at the law firm of Allen Matkins Leck Gamble Mallory & Natsis

4    LLP, counsel of record for Plaintiff Michael A. Grassmueck as Receiver in the above-captioned

5    action.  I am a member in good standing of the State Bar of California and have been admitted to

6    practice before this Court.  I have personal knowledge of the facts set forth in this Declaration and,

7    if called as a witness, could and would testify competently to such facts under oath.

8    2.      Attached hereto as **<u>Exhibit A</u>** is a true and correct copy of the Plea Agreement of

9    Lobsang Dargey, Docket No. 6 in *United States v. Lobsang Dargey*, WAWD Case No. Case 2:17-

10   cr-00001-RSL.

11   3.      Attached hereto as **<u>Exhibit B</u>** is a true and correct copy of the Consent To Final

12   Judgment As To Defendant Lobsang Dargey And Relief Defendant Path Othello, LLC,  in

13   *Securities and Exchange Commission v. Path America, LLC, et al.*, WAWD Case No. 2:15-cv-

14   01350-JLR.

15   I declare under penalty of perjury of the laws of the United States that the foregoing is true

16   and correct.

17   Executed on October 31, 2018, at Los Angeles, California.

18

19                                                          /s/ David R. Zaro

20                                                               David R. Zaro

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

DECLARATION OF DAVID R. ZARO IN SUPPORT OF
RECEIVER'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN
Case No. 2:15-cv-01350-JLR
1141340.01                                              -2-

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

Dated:  October 31, 2018

*s/  David R. Zaro*

David R. Zaro, Esq. #124334 (CA)
*(Pro Hac Vice Granted October 26, 2015)*

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

DECLARATION OF DAVID R. ZARO IN SUPPORT OF
RECEIVER'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN
Case No. 2:15-cv-01350-JLR
1141340.01

-3-

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

# EXHIBIT A

The Honorable Thomas S. Zilly

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JAN 04 2017

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____DEPUTY

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

LOBSANG DARGEY,

      Defendant.

NO. CR17-001TSZ

**PLEA AGREEMENT**

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Justin W. Arnold and Seth Wilkinson, Assistant United States Attorneys, Lobsang Dargey and his attorney, Robert Mahler, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

    1.    **Waiver of Indictment**. Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

    2.    **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to the following charges contained in the Information.

U.S. v. Lobsang Dargey; Plea Agreement- 1

1          a.     Conspiracy to Commit Wire Fraud, as charged in Count 1, in

2 violation of Title 18, United States Code, Section 371; and

3          b.     Scheme to Conceal Information From the United States, as charged

4 in Count 2, in violation of Title 18, United States Code, Section 1001(a)(1).

5        By entering pleas of guilty, Defendant hereby waives all objections to the form of

6 the charging document. Defendant further understands that before entering his guilty

7 pleas, he will be placed under oath. Any statement given by Defendant under oath may

8 be used by the United States in a prosecution for perjury or false statement.

9        3.     **Elements of the Offense**. The elements of the offenses to which

10 Defendant is pleading guilty are as follows:

11          a.     The elements of Conspiracy to Commit Wire Fraud, as charged in

12 Count 1, in violation of Title 18, United States Code, Section 371, are as follows:

13        *First*, there was an agreement between two or more persons to commit the crime

14 of wire fraud;

15        *Second*, the defendant became a member of the conspiracy knowing of its object

16 and intending to help accomplish it;

17        *Third*, one of the members of the conspiracy performed at least one overt act for

18 the purpose of carrying out the conspiracy.

19          b.     The elements of Scheme to Conceal Information From the United

20 States, as charged in Count 2, in violation of Title 18, United States Code, Section

21 1001(a)(1) are as follows:

22        *First*, the defendant falsified, concealed, or covered up, by any trick, scheme,

23 artifice, and device, facts within the jurisdiction of the Department of Homeland Security

24 and the United States Citizenship and Immigration Services;

25        *Second*, the defendant acted willfully; that is, the defendant acted deliberately and

26 with knowledge that he was falsifying, concealing, or covering up the facts by any trick,

27 scheme, artifice, and device, and that his conduct was unlawful; and

28

U.S. v. Lobsang Dargey; Plea Agreement- 2

1  *Third*, the facts were material to the activities or decisions of the Department of
2  Homeland Security and United States Citizenship and Immigration Services; that is, the
3  facts had a natural tendency to influence, or were capable of influencing, the agency's
4  decisions or activities.

5     4.     **The Penalties**. Defendant understands that the statutory penalties
6  applicable to the offenses to which he is pleading guilty are as follows:

7        a.     For the offense of Conspiracy to Commit Wire Fraud, as charged in
8  Count 1: A maximum term of imprisonment of five (5) years, a fine of up to two
9  hundred fifty thousand dollars ($250,000) or twice the gross pecuniary gain to the
10 defendant or the gross pecuniary loss to the victims of the offense, a period of supervision
11 following release from prison of up to three (3) years, and a mandatory special
12 assessment of one hundred dollars ($100).

13       b.     For the offense of Scheme to Conceal Information From the United
14 States, as charged in Count 2: A maximum term of imprisonment of five (5) years, a fine
15 of up to two hundred fifty thousand dollars ($250,000), a period of supervision following
16 release from prison of up to three (3) years, and a mandatory special assessment of one
17 hundred dollars ($100).

18 Defendant understands that the Court may order that the terms of imprisonment
19 for Counts 1 and 2 run consecutively, for a total maximum term of imprisonment of ten
20 (10) years.

21 If a probationary sentence is imposed, the probation period can be for up to five
22 (5) years. Defendant agrees that the special assessment shall be paid at or before the time
23 of sentencing.

24 Defendant understands that supervised release is a period of time following
25 imprisonment during which he will be subject to certain restrictive conditions and
26 requirements. Defendant further understands that if supervised release is imposed and he
27 violates one or more of the conditions or requirements, Defendant could be returned to

28

U.S. v. Lobsang Dargey; Plea Agreement- 3

1   prison for all or part of the term of supervised release that was originally imposed. This
2   could result in Defendant's serving a total term of imprisonment greater than the statutory
3   maximum stated above.

4       Defendant understands that as a part of any sentence, in addition to any term of
5   imprisonment and/or fine that is imposed, the Court may order Defendant to pay
6   restitution to any victim of the offense, as required by law.

7       Defendant agrees that any monetary penalty the Court imposes, including the
8   special assessment, fine, costs, or restitution, is due and payable immediately and further
9   agrees to submit a completed Financial Statement of Debtor form as requested by the
10  United States Attorney's Office.

11      5.    **Rights Waived by Pleading Guilty.**  Defendant understands that by
12  pleading guilty, he knowingly and voluntarily waives the following rights:

13      a.    The right to plead not guilty and to persist in a plea of not guilty;

14      b.    The right to a speedy and public trial before a jury of his peers;

15      c.    The right to the effective assistance of counsel at trial, including, if
16  Defendant could not afford an attorney, the right to have the Court
17  appoint one for him;

18      d.    The right to be presumed innocent until guilt has been established
19  beyond a reasonable doubt at trial;

20      e.    The right to confront and cross-examine witnesses against Defendant
21  at trial;

22      f.    The right to compel or subpoena witnesses to appear on his behalf at
23  trial;

24      g.    The right to testify or to remain silent at trial, at which trial such
25  silence could not be used against Defendant; and

26      h.    The right to appeal a finding of guilt or any pretrial rulings.

27

28

U.S. v. Lobsang Dargey; Plea Agreement- 4

6. **Ultimate Sentence**. Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7. **Statement of Facts**. Defendant admits he is guilty of the charged offenses. The parties agree on the following facts:

  a. *Background:* Between 2011 and August 24, 2015, defendant Lobsang Dargey owned and operated several Washington-based real estate development companies, including Path America LLC, Dargey Development LLC, and Dargey Enterprises LLC.

  b. During this time, defendant Lobsang Dargey also owned and operated Path America SnoCo LLC and Path America KingCo LLC, two EB-5 regional centers approved by the United States Immigration and Citizenship Services ("USCIS"), an agency within the Department of Homeland Security.

  c. Using the two USCIS-approved regional centers, Path America SnoCo LLC and Path America KingCo LLC, defendant Lobsang Dargey promoted two EB-5 projects to immigrant investors, Path America Farmer's Market (the "PAFM Project") and Potala Tower (the "Tower Project"), respectively.

  d. *Promotion of the EB-5 Investments:* To promote the PAFM Project and Tower Project to immigrant investors, defendant Lobsang Dargey prepared and caused to be prepared a number of offering materials, including Private Placement Memoranda, Subscription Agreements, Escrow Agreements, Partnership Agreements, and Business Plans for both projects (collectively, the "EB-5 Offering Materials"). Defendant Lobsang Dargey submitted and caused to be submitted the EB-5 Offering Materials to potential immigrant investors in China. The EB-5 Offering Materials represented that: (1) investments in the PAFM Project and Tower Project were suitable for immigrant investors under the EB-5 program; and (2) defendant Lobsang Dargey would manage the offering and construction of the PAFM Project and Tower Project to be compliant with USCIS rules for the EB-5 program.

  e. Defendant Lobsang Dargey knew that the immigrant investors would rely on the representations in the EB-5 Offering Materials in deciding whether to invest in the PAFM Project and the Tower Project. Defendant Lobsang Dargey also knew that the immigrant investors would be required to submit the EB-5 Offering Materials to USCIS in support of the investors' I-526 petitions seeking conditional residence in the United States.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f.     The EB-5 Offering Materials represented that defendant Lobsang Dargey would use the immigrant investors' $500,000 investments in the PAFM Project and Tower Project to build the projects in accordance with the Business Plans for each project.  In addition, the EB-5 Offering Materials represented that defendant Lobsang Dargey would use the $45,000 administrative fees to pay sales commissions and other offering expenses.  The EB-5 Offering Materials also represented that defendant Lobsang Dargey would make millions of dollars of equity contributions to the projects.

g.     Despite his representations in the EB-5 Offering Materials, defendant Lobsang Dargey knowingly: (1) failed to contribute any funds to the projects as equity; (2) used portions of the EB-5 investors' $500,000 capital contributions for purposes other than the construction of the PAFM Project and Tower Project; and (3) caused the PAFM Project and Tower Project to depart from the business plans for both projects in numerous material respects without informing the immigrant investors or USCIS.  These actions could have rendered each investor ineligible for an EB-5 visa.

h.     Specifically, contrary to his representations, defendant Lobsang Dargey used a portion of the immigrant investors' $500,000 capital contributions for the PAFM Project and Tower Project: (1) to pay $11.5 million in commissions and syndication costs related to the offerings; and (2) to divert $16.8 million to other non-EB-5 real estate projects defendant Lobsang Dargey owned and controlled, including his Kirkland, Shoreline, and Othello projects.

i.     Between April 2012 and August 24, 2015, defendant Lobsang Dargey knowingly and deliberately filed and caused to be filed with USCIS numerous documents, including the Offering Materials, knowing that the documents contained material misrepresentations and omissions concerning the PAFM and Tower projects.  Defendant Lobsang Dargey did so knowing that his conduct was unlawful.

j.     ***The Voya Loans:***  To fund a portion of the PAFM Project, defendant Lobsang Dargey applied for, and obtained, a $25 million construction loan from Voya Insurance and Annuity Company ("Voya").  As part of the loan, Voya required defendant Lobsang Dargey to personally guarantee the loan through construction and stabilization of the project.  To verify that defendant Lobsang Dargey had sufficient financial means to satisfy the personal guarantee, Voya required defendant Lobsang Dargey to disclose personal financial information, including concerning his personal liquid assets.

k.     To satisfy Voya, defendant Lobsang Dargey submitted a personal financial statement to Voya that represented that a Path America Asia, Ltd. bank account at HSBC in Hong Kong contained over $9.6 million in U.S. dollars.  In support of this statement, defendant Lobsang Dargey created and caused to be created a materially false

U.S. v. Lobsang Dargey; Plea Agreement- 6

and fraudulent bank statement for the HSBC account that showed a balance in excess of $9.6 million U.S. dollars when, in fact, the balance was less than $450,000 U.S. dollars. Defendant Lobsang Dargey submitted this fraudulent bank statement to Voya to support his false and fraudulent representations on his personal financial statement.

l.      After obtaining the $25 million loan from Voya, defendant Lobsang Dargey was required to provide quarterly financial statements to Voya.  Defendant Lobsang Dargey directed a Path America employee to alter the PAFM LLC balance sheets by removing entries that reflected that millions of dollars had been diverted from the projects.  Defendant Lobsang Dargey then directed the employee to affix his signature to the altered financial statements and submit them to Voya.

m.      Defendant Lobsang Dargey also attempted to obtain a $66 million construction loan from Voya for the Tower Project.  Again, Voya required that defendant Lobsang Dargey and his wife personally guarantee the loan, and required information concerning defendant Lobsang Dargey's financial condition to ensure he had sufficient liquid assets to fund construction cost overruns and to make payments on the loan.  On or about July 27, 2015, defendant Lobsang Dargey sent Voya another materially false and fraudulent Path America Asia, Ltd. HSBC bank statement which defendant Lobsang Dargey had altered or caused to be altered to make it appear that the account balance was approximately $8.2 million U.S. dollars when, in fact, the account balance was less than $400,000 U.S. dollars.

n.      ***The Binjiang Investment:***  In 2015, defendant Lobsang Dargey solicited and obtained $60 million from a Chinese investment company, Shanghai Binshun Investment Management Company ("Binjiang"), for equity investments in the Tower Project ($30 million) and defendant Lobsang Dargey's Shoreline and Othello projects ($15 million each).

o.      On or about June 4, 2015, prior to Binjiang's funding of the investments, a representative of Deloitte Touche Tomhatsu Ltd. ("Deloitte") in Hong Kong asked defendant Lobsang Dargey to send financial statements for the three projects. At the time, certain entries on the Potala Tower Seattle LLC balance sheet reflected that Potala Tower Seattle LLC was owed $16.8 million from the PAFM Project and defendant Lobsang Dargey's Kirkland, Shoreline, and Othello projects as a result of the defendant Lobsang Dargey's diversions described above (the "due from entries").

p.      On or about June 8th and 9th, 2015, defendant Lobsang Dargey directed other Path America employees to: (1) remove the $16.8 million in due from entries from the Potala Tower Seattle LLC balance sheet and to place them on the balance sheet for Path America Tower LP; and (2) reduce the amount of immigrant

U.S. v. Lobsang Dargey; Plea Agreement- 7

investor funds loaned from Path America Tower LP to Potala Tower Seattle LLC by $16.8 million.

q.     As part of its investment into the Tower Project and the Shoreline and Othello projects, Binjiang required defendant Lobsang Dargey to make equity contributions in the amounts of $15 million for the Tower Project and $5 million each for the Shoreline and Othello projects. These obligations were set out in a series of Investment Agreements between Binjiang and business entities controlled by defendant Lobsang Dargey. With respect to the Tower Project, defendant Lobsang Dargey represented to Binjiang that he had already contributed approximately $12 million to purchase the land for the project, and would make an additional $3 million equity contribution. In fact, defendant Lobsang Dargey had purchased the Tower land with seller financing, and subsequently used investor funds to pay for the land. With respect to Othello, defendant Lobsang Dargey represented that he had already contributed $3 million to the project and would make an additional equity contribution of $2 million. With respect to Shoreline, the Shoreline Investment Agreement required defendant Lobsang Dargey to make a total equity contribution of $5 million. Defendant Lobsang Dargey represented that he had already contributed $8.5 million toward the Shoreline project. Accordingly, the Shoreline Investment Agreement stated that defendant Lobsang Dargey had made an "excess" equity contribution of $3.5 million, which would be "refunded" to defendant Lobsang Dargey out of Binjiang's $15 million investment.

r.     On or about June 8 and 9, 2015, defendant Lobsang Dargey directed another Path America employee to make a number of journal entries in the accounting records for Potala Tower Seattle LLC, Path Shoreline LLC, Path Othello LLC, and Dargey Development to make it appear that Lobsang Dargey and Dargey Development had incurred millions of dollars of direct overhead expenses on behalf of the projects for which Lobsang Dargey and Dargey Development had not been reimbursed, when in fact, Lobsang Dargey and Dargey Development had not incurred these costs. The effect of these entries was to create the appearance that Potala Tower Seattle LLC owed $3.7 million to Lobsang Dargey, and that Path Shoreline LLC and Path Othello LLC owed Dargey Development $500,000 and $1,500,000, respectively. Defendant Lobsang Dargey then directed the employee to convert these purported obligations into equity credits in favor of Lobsang Dargey and Dargey Development, making it appear that equity contributions in these amounts had been made to the projects. These journal entries lacked economic substance, and neither Dargey Development nor Lobsang Dargey received any real economic benefit from these journal entries.

s.     Similarly, defendant Lobsang Dargey also directed the Path America employee to make a number of journal entries in the accounting records for Path Shoreline LLC, Path Othello LLC, and Dargey Development to make it appear that

U.S. v. Lobsang Dargey; Plea Agreement- 8

Dargey Development had earned millions of dollars in developer fees. These entries made it appear as if Path Shoreline LLC and Path Othello LLC owed developer fees to Dargey Development in the amounts of $1,000,000, and $2,500,000, respectively. Defendant Lobsang Dargey then directed the employee to convert these fictitious obligations into equity credits in favor of Dargey Development. As a result of these journal entries, the balance sheets for Path Shoreline LLC and Path Othello LLC reflected that defendant Lobsang Dargey and the entities he controlled had complied with the equity contribution requirements set forth in the Investment Agreements with Binjiang. These journal entries lacked economic substance, and neither Dargey Development nor Lobsang Dargey received any real economic benefit from these journal entries.

t.      ***Overt Acts:***  Lobsang Dargey agreed with other individuals known and unknown to engage in various overt acts in furtherance of the conspiracy to commit wire fraud on the investors and USCIS. As one example, on or about May 13, 2015, defendant Lobsang Dargey caused $6,000,000 derived solely from Potala Tower investors' capital contributions to be used to purchase land for defendant Lobsang Dargey's Shoreline project by means of an interstate and foreign wire transmission.

8.      **United States Sentencing Guidelines**.  Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

U.S. v. Lobsang Dargey; Plea Agreement- 9

1          a.    The Court will determine applicable Defendant's Sentencing

2   Guidelines range at the time of sentencing;

3          b.    After consideration of the Sentencing Guidelines and the factors in

4   18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

5   maximum term authorized by law;

6          c.    The Court is not bound by any recommendation regarding the

7   sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

8   range offered by the parties or the United States Probation Department, or by any

9   stipulations or agreements between the parties in this Plea Agreement; and

10         d.    Defendant may not withdraw his guilty plea solely because of the

11  sentence imposed by the Court.

12      9.    **Acceptance of Responsibility.**  At sentencing, *if* the district court

13  concludes Defendant qualifies for a downward adjustment for acceptance of

14  responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or

15  greater, the United States will make the motion necessary to permit the district court to

16  decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b),

17  because Defendant has assisted the United States by timely notifying the United States of

18  his intention to plead guilty, thereby permitting the United States to avoid preparing for

19  trial and permitting the Court to allocate its resources efficiently.

20      10.    **Sentencing Factors.**  The parties agree that the following Sentencing

21  Guidelines provisions apply to this case:

22         a.    A base offense level of six (6) pursuant to USSG § 2B1.1(a)(2);

23         b.    A twenty (20) level enhancement pursuant to USSG

24  § 2B1.1(b)(1)(K) based upon a loss for guidelines purpose of more than $9,500,000 but

    less than $25,000,000.  The total loss amount of $24,242,220 reflects $12,690,000 in total

25  administrative fees paid by investors, and an additional $11,552,220 in additional

26  commissions and syndication payments made out of the investors' $500,000 capital

27  contribution.

28

U.S. v. Lobsang Dargey; Plea Agreement- 10

c. A two (2) level enhancement pursuant to USSG § 2B1.1(b)(2)(A) because the defendant's offense involved ten (10) or more victims;

d. A two (2) level enhancement pursuant to USSG § 2B1.1(b)(10)(B) and (C) because: (1) a substantial part of the fraudulent scheme was committed from outside the United States; and (2) the offense otherwise involved sophisticated means and the defendant intentionally engaged in the conduct constituting sophisticated means;

e. A four (4) level enhancement pursuant to USSG § 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and

f. A two (2) level enhancement pursuant to USSG § 3B1.3 because the defendant abused a position of private trust in a manner that significantly facilitated the commission of the offense.

The parties agree that, with the exception of acceptance of responsibility referenced in paragraph 9, no other Sentencing Guidelines adjustments or enhancements are appropriate or readily provable. Defendant understands that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11. **Restitution.** Defendant shall make restitution to the victims of his offense in the amount of $24,242,220. This amount, which reflects the loss to the victims of Defendant's conduct, includes $11,552,220 in unauthorized commission payments and syndication costs and $12,690,000 in administrative fees paid by the immigrant investors. Thirty-five (35) of the Tower investors were previously refunded the full amount of their capital contribution, and therefore, are entitled to $45,000 each representing their administrative fees. The remaining 247 investors shall each be entitled to receive total restitution of $91,770, which consists of (a) $46,770 for commissions and syndication costs, and (b) $45,000 for administrative fees. This amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

U.S. v. Lobsang Dargey; Plea Agreement- 11

In the event that any investor is repaid an amount greater than $453,230 of the principal amount of his or her capital contribution through returns on the investment or money distributed by the Receiver, the $46,770 portion of the restitution obligation to that investor will be reduced by the amount he or she received in excess of $453,230, such that an investor who is repaid his or her full $500,000 capital contribution shall not be entitled to any restitution for commissions and syndication costs. In addition, to the extent any portion of the $45,000 administrative fee is returned to any investor, the $45,000 portion of the restitution obligation for that investor will be reduced accordingly. In light of Defendant's restitution obligation, the United States agrees to recommend that no fine be imposed.

12. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

U.S. v. Lobsang Dargey; Plea Agreement- 12

Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees that, in the event Defendant breaches this Plea Agreement, Defendant will not oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Plea Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

14. **Waiver of Appellate Rights and Rights to Collateral Attacks.**

Defendant acknowledges that by entering the guilty plea required by this plea agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

U.S. v. Lobsang Dargey; Plea Agreement- 13

a.     Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

b.     Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15.    **Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his plea of guilty.

16.    **Statute of Limitations**.  In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty (30) days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

U.S. v. Lobsang Dargey; Plea Agreement- 14

17. **Completeness of Agreement**. The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated: January 4, 2017.

_____
LOBSANG DARGEY
Defendant

_____
ROBERT MAHLER
Attorney for Defendant

_____
JUSTIN W. ARNOLD
Assistant United States Attorney

_____
SETH WILKINSON
Assistant United States Attorney

U.S. v. Lobsang Dargey; Plea Agreement- 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE
5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Exhibit A - Page 19**

# EXHIBIT B

**Page 21**

Case 2:15-cv-01350-JLR Document 649-2 Filed 10/31/18 Page 21 of 42
Case 2:15-cv-01350-JLR Document 506 Filed 03/02/18 Page 1 of 22

THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    vs.<br><br>PATH AMERICA, LLC, et al.,<br><br>        Defendants and Relief Defendants. | Civil Action No. C-15-1350-JLR<br><br>CONSENT TO FINAL JUDGMENT AS TO DEFENDANT LOBSANG DARGEY AND RELIEF DEFENDANT PATH OTHELLO, LLC |

CONSENT TO FINAL JUDGMENT AS TO DEF.
DARGEY AND REL. DEF. PATH OTHELLO, LLC
CASE NO. C-15-1350-JLR

SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104
(415) 705-2500

**Exhibit B - Page 21**

Case 2:15-cv-01350-JLR Document 640-2   Filed 10/31/18   Page 23 of 42
Case 2:15-cv-01350-JLR Document 506   Filed 03/02/18   Page 22 of 22

**Page 22**

1.       Defendant Lobsang Dargey ("Defendant") and Relief Defendant Path Othello, LLC ("Relief Defendant") each acknowledges having been served with the complaint, as amended, in this action, has entered a general appearance, and admits the Court's jurisdiction over Defendant and over Relief Defendant and over the subject matter of this action.

2.       Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Lobsang Dargey*, Crim. No. 17-001      (W.D. Wash.), Defendant pleaded guilty to violations of 18 U.S.C. § 371, Conspiracy to Commit Wire Fraud, and 18 U.S.C. § 1001(a)(1), Scheme to Conceal Information From the United States.  In connection with that plea, Defendant admitted to the facts set forth in the Plea Agreement (attached as Annex A hereto).  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in *United States v. Lobsang Dargey*.

3.       Defendant and Relief Defendant hereby consent to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

(a)       permanently restrains and enjoins Defendant from violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5; Sections 17(a)(1), (a)(2) and (a)(3) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1), (a)(2) & (a)(3); from, directly or indirectly, soliciting any person or entity to purchase or sell any security issued by any entity he controls and from, directly or indirectly, participating in the issuance, offer, or sale of any security of any entity he controls, provided however, that such injunction shall not prevent Defendant from purchasing securities for or selling securities from his own personal account;

(b)       orders Defendant to pay disgorgement in the amount of $17.6 million, plus prejudgment interest thereon in the amount of $791,182.82, for a total sum of $18,391,182.82, which amount shall be deemed satisfied by: (1) Defendant's relinquishment of all legal and equitable right, title, and interest in all properties, businesses, funds and assets currently controlled by the Court Appointed Receiver in this action as set forth in Annex B hereto; and (2) the order of

CONSENT TO FINAL JUDGMENT AS TO DEF.
DARGEY AND REL. DEF. PATH OTHELLO, LLC
CASE NO. C-15-1350-JLR

1

SECURITIES AND EXCHANGE COMMISSION
44 MONTGOMERY STREET, SUITE 2800
SAN FRANCISCO, CALIFORNIA 94104
(415) 705-2500

**Page 23**

Case 2:15-cv-01350-JLR Document 64-2 Filed 10/31/18 Page 23 of 42
Case 2:15-cv-01350-JLR Document 50-2 Filed 03/02/18 Page 33 of 42

1  restitution described in Paragraph 11 of the Plea Agreement (attached as Annex A hereto) in

2  *United States v. Lobsang Dargey* (which shall not be altered or affected by this Consent).

3       4.    Defendant and Relief Defendant waive the entry of findings of fact and conclusions

4  of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

5       5.    Defendant and Relief Defendant waive the right, if any, to a jury trial and to appeal

6  from the entry of the Final Judgment.

7       6.    Defendant and Relief Defendant enter into this Consent voluntarily and represent

8  that no threats, offers, promises, or inducements of any kind have been made by the Securities and

9  Exchange Commission or any member, officer, employee, agent, or representative of the

10  Commission to induce Defendant or Relief Defendant to enter into this Consent.

11       7.    Defendant and Relief Defendant agree that this Consent shall be incorporated into

12  the Final Judgment with the same force and effect as if fully set forth therein.

13       8.    Defendant and Relief Defendant will not oppose the enforcement of the Final

14  Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules

15  of Civil Procedure, and hereby waive any objection based thereon.

16       9.    Defendant and Relief Defendant waive service of the Final Judgment and agree that

17  entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute

18  notice to Defendant and to Relief Defendant of its terms and conditions. Defendant and Relief

19  Defendant further agree to provide counsel for the Commission, within thirty days after the Final

20  Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that

21  Defendant and Relief Defendant have received and read a copy of the Final Judgment.

22       10.    Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted

23  against Defendant and Relief Defendant in this civil proceeding.  Defendant and Relief Defendant

24  acknowledge that no promise or representation has been made by the Commission or any member,

25  officer, employee, agent, or representative of the Commission with regard to any criminal liability

26  that may have arisen or may arise from the facts underlying this action or immunity from any such

27  criminal liability.  Defendant and Relief Defendant waive any claim of Double Jeopardy based

28  upon the settlement of this proceeding, including the imposition of any remedy or civil penalty

CONSENT TO FINAL JUDGMENT AS TO DEF.        2        SECURITIES AND EXCHANGE COMMISSION
DARGEY AND REL. DEF. PATH OTHELLO, LLC             44 MONTGOMERY STREET, SUITE 2800
CASE NO. C-15-1350-JLR                       SAN FRANCISCO, CALIFORNIA 94104
                                           (415) 705-2500

**Exhibit B - Page 23**

1    herein.  Defendant and Relief Defendant further acknowledge that the Court's entry of a

2    permanent injunction may have collateral consequences under federal or state law and the rules

3    and regulations of self-regulatory organizations, licensing boards, and other regulatory

4    organizations.  Such collateral consequences include, but are not limited to, a statutory

5    disqualification with respect to membership or participation in, or association with a member of, a

6    self-regulatory organization.  This statutory disqualification has consequences that are separate

7    from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary

8    proceeding before the Commission based on the entry of the injunction in this action, Defendant

9    and Relief Defendant understand that he and Relief Defendant shall not be permitted to contest the

10    factual allegations of the complaint in this action.

11        11.      Defendant and Relief Defendant understand and agree to comply with the terms of

12    17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a

13    defendant or respondent to consent to a judgment or order that imposes a sanction while denying

14    the allegations in the complaint or order for proceedings." As part of Defendant's and Relief

15    Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the

16    guilty plea stated in the Plea Agreement (attached as Annex A hereto) in *United States v. Lobsang*

17    *Dargey* for related conduct, and agrees:  Defendant: (i) will not take any action or make or permit

18    to be made any public statement denying, directly or indirectly, any allegation in the complaint or

19    creating the impression that the complaint is without factual basis; (ii) will not make or permit to

20    be made any public statement to the effect that Defendant does not admit the allegations of the

21    complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this

22    Consent, Defendant and Relief Defendant hereby withdraw any papers filed in this action to the

23    extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions

24    to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. §523, that the allegations

25    in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil

26    penalty or other amounts due by Defendant under the Final Judgment or any other judgment,

27    order, consent order, decree or settlement agreement entered in connection with this proceeding, is

28    a debt for the violation by Defendant of the federal securities laws or any regulation or order

CONSENT TO FINAL JUDGMENT AS TO DEF.        3        SECURITIES AND EXCHANGE COMMISSION
DARGEY AND REL. DEF. PATH OTHELLO, LLC        44 MONTGOMERY STREET, SUITE 2800
CASE NO. C-15-1350-JLR        SAN FRANCISCO, CALIFORNIA 94104
       (415) 705-2500

**Exhibit B - Page 24**

Case 2:15-cv-01350-JLR Document 64-2 Filed 10/31/18 Page 25 of 42
Case 2:15-cv-01350-JLR Document 50-2 Filed 03/02/18 Page 35 of 22
**Page 25**

1   issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C.

2   §523(a)(19). If Defendant or Relief Defendant breaches this agreement, the Commission may

3   petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing

4   in this paragraph affects Defendant's or Relief Defendant's: (i) testimonial obligations; or (ii) right

5   to take legal or factual positions in litigation or other legal proceedings in which the Commission

6   is not a party.

7       12.     Defendant and Relief Defendant hereby waive any rights under the Equal Access to

8   Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other

9   provision of law to seek from the United States, or any agency, or any official of the United States

10   acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or

11   other fees, expenses, or costs expended by Defendant or Relief Defendant to defend against this

12   action. For these purposes, Defendant and Relief Defendant agree that neither Defendant nor

13   Relief Defendant is the prevailing party in this action since the parties have reached a good faith

14   settlement.

15       13.     Defendant and Relief Defendant agree that the Commission may present the Final

16   Judgment to the Court for signature and entry without further notice.

17       14.     Defendant and Relief Defendant agree that this Court shall retain jurisdiction over

18   this matter for the purpose of enforcing the terms of the Final Judgment.

19

20   Dated: 01/03/2017                        Lobsang Dargey

21

22

23   Dated: 01/03/2017

24                                Path Othello, LLC, by its Manager

25                                Dargey Management Services, Inc.
                                President Lobsang Dargey

26

27

28

CONSENT TO FINAL JUDGMENT AS TO DEF.       4       SECURITIES AND EXCHANGE COMMISSION
DARGEY AND REL. DEF. PATH OTHELLO, LLC                   44 MONTGOMERY STREET, SUITE 2800
CASE NO. C-15-1350-JLR                                SAN FRANCISCO, CALIFORNIA 94104
                                                     (415) 705-2500



Case 2:15-cv-01350-JLR  Document 649-2  Filed 10/31/18  Page 26 of 42
Case 2:15-cv-01350-JLR  Document 506  Filed 03/02/18  Page 6 of 22
**Page 26**

**ANNEX A TO THE CONSENT TO FINAL JUDGMENT AS TO DEFENDANT LOBSANG DARGEY AND RELIEF DEFENDANT PATH OTHELLO, LLC**

(PLEA AGREEMENT IN *UNITED STATES V. LOBSANG DARGEY*, CR. NO. 17-001 (W.D. WASH.))

Case 2:15-cv-01350-JLR  Document 649-2  Filed 10/31/18  Page 27 of 42
Case 2:17-cr-00001-TSZ  Document 06  Filed 01/04/17  Page 1 of 12

_____ FILED   _____ ENTERED
_____ LODGED  _____ RECEIVED

JAN 04 2017

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

The Honorable Thomas S. Zilly

# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR17-001TSZ |
| Plaintiff, | |
| | **PLEA AGREEMENT** |
| v. | |
| LOBSANG DARGEY, | |
| Defendant. | |

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Justin W. Arnold and Seth Wilkinson, Assistant United States Attorneys, Lobsang Dargey and his attorney, Robert Mahler, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

1.    **Waiver of Indictment**.  Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charges brought by the United States Attorney in an Information.

2.    **The Charges**.  Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters pleas of guilty to the following charges contained in the Information.

U.S. v. Lobsang Dargey; Plea Agreement- 1

Case 2:15-cv-01350-JLR Document 64-2 Filed 10/31/18 Page 88 of 42

1         a.     Conspiracy to Commit Wire Fraud, as charged in Count 1, in

2    violation of Title 18, United States Code, Section 371; and

3         b.     Scheme to Conceal Information From the United States, as charged

4    in Count 2, in violation of Title 18, United States Code, Section 1001(a)(1).

5         By entering pleas of guilty, Defendant hereby waives all objections to the form of

6    the charging document.  Defendant further understands that before entering his guilty

7    pleas, he will be placed under oath.  Any statement given by Defendant under oath may

8    be used by the United States in a prosecution for perjury or false statement.

9         3.     **Elements of the Offense**.  The elements of the offenses to which

10   Defendant is pleading guilty are as follows:

11        a.     The elements of Conspiracy to Commit Wire Fraud, as charged in

12   Count 1, in violation of Title 18, United States Code, Section 371, are as follows:

13        *First*, there was an agreement between two or more persons to commit the crime

14   of wire fraud;

15        *Second*, the defendant became a member of the conspiracy knowing of its object

16   and intending to help accomplish it;

17        *Third*, one of the members of the conspiracy performed at least one overt act for

18   the purpose of carrying out the conspiracy.

19        b.     The elements of Scheme to Conceal Information From the United

20   States, as charged in Count 2, in violation of Title 18, United States Code, Section

21   1001(a)(1) are as follows:

22        *First*, the defendant falsified, concealed, or covered up, by any trick, scheme,

23   artifice, and device, facts within the jurisdiction of the Department of Homeland Security

24   and the United States Citizenship and Immigration Services;

25        *Second*, the defendant acted willfully; that is, the defendant acted deliberately and

26   with knowledge that he was falsifying, concealing, or covering up the facts by any trick,

27   scheme, artifice, and device, and that his conduct was unlawful; and

28   U.S. v. Lobsang Dargey; Plea Agreement- 2

Case 2:15-cv-01350-JLR Document 64-2 Filed 10/31/18 Page 39 of 42

1        *Third*, the facts were material to the activities or decisions of the Department of

2 Homeland Security and United States Citizenship and Immigration Services; that is, the

3 facts had a natural tendency to influence, or were capable of influencing, the agency's

4 decisions or activities.

5        4.    **The Penalties**. Defendant understands that the statutory penalties

6 applicable to the offenses to which he is pleading guilty are as follows:

7        a.    For the offense of Conspiracy to Commit Wire Fraud, as charged in

8 Count 1: A maximum term of imprisonment of five (5) years, a fine of up to two

9 hundred fifty thousand dollars ($250,000) or twice the gross pecuniary gain to the

10 defendant or the gross pecuniary loss to the victims of the offense, a period of supervision

11 following release from prison of up to three (3) years, and a mandatory special

12 assessment of one hundred dollars ($100).

13        b.    For the offense of Scheme to Conceal Information From the United

14 States, as charged in Count 2: A maximum term of imprisonment of five (5) years, a fine

15 of up to two hundred fifty thousand dollars ($250,000), a period of supervision following

16 release from prison of up to three (3) years, and a mandatory special assessment of one

17 hundred dollars ($100).

18        Defendant understands that the Court may order that the terms of imprisonment

19 for Counts 1 and 2 run consecutively, for a total maximum term of imprisonment of ten

20 (10) years.

21        If a probationary sentence is imposed, the probation period can be for up to five

22 (5) years. Defendant agrees that the special assessment shall be paid at or before the time

23 of sentencing.

24        Defendant understands that supervised release is a period of time following

25 imprisonment during which he will be subject to certain restrictive conditions and

26 requirements. Defendant further understands that if supervised release is imposed and he

27 violates one or more of the conditions or requirements, Defendant could be returned to

28

U.S. v. Lobsang Dargey; Plea Agreement- 3

prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

5. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

  a. The right to plead not guilty and to persist in a plea of not guilty;

  b. The right to a speedy and public trial before a jury of his peers;

  c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

  d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

  e. The right to confront and cross-examine witnesses against Defendant at trial;

  f. The right to compel or subpoena witnesses to appear on his behalf at trial;

  g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

  h. The right to appeal a finding of guilt or any pretrial rulings.

U.S. v. Lobsang Dargey; Plea Agreement- 4

6.    **Ultimate Sentence**.  Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

7.    **Statement of Facts**.  Defendant admits he is guilty of the charged offenses. The parties agree on the following facts:

a.    ***Background:***  Between 2011 and August 24, 2015, defendant Lobsang Dargey owned and operated several Washington-based real estate development companies, including Path America LLC, Dargey Development LLC, and Dargey Enterprises LLC.

b.    During this time, defendant Lobsang Dargey also owned and operated Path America SnoCo LLC and Path America KingCo LLC, two EB-5 regional centers approved by the United States Immigration and Citizenship Services ("USCIS"), an agency within the Department of Homeland Security.

c.    Using the two USCIS-approved regional centers, Path America SnoCo LLC and Path America KingCo LLC, defendant Lobsang Dargey promoted two EB-5 projects to immigrant investors, Path America Farmer's Market (the "PAFM Project") and Potala Tower (the "Tower Project"), respectively.

d.    ***Promotion of the EB-5 Investments:***  To promote the PAFM Project and Tower Project to immigrant investors, defendant Lobsang Dargey prepared and caused to be prepared a number of offering materials, including Private Placement Memoranda, Subscription Agreements, Escrow Agreements, Partnership Agreements, and Business Plans for both projects (collectively, the "EB-5 Offering Materials"). Defendant Lobsang Dargey submitted and caused to be submitted the EB-5 Offering Materials to potential immigrant investors in China.  The EB-5 Offering Materials represented that: (1) investments in the PAFM Project and Tower Project were suitable for immigrant investors under the EB-5 program; and (2) defendant Lobsang Dargey would manage the offering and construction of the PAFM Project and Tower Project to be compliant with USCIS rules for the EB-5 program.

e.    Defendant Lobsang Dargey knew that the immigrant investors would rely on the representations in the EB-5 Offering Materials in deciding whether to invest in the PAFM Project and the Tower Project.  Defendant Lobsang Dargey also knew that the immigrant investors would be required to submit the EB-5 Offering Materials to USCIS in support of the investors' I-526 petitions seeking conditional residence in the United States.

U.S. v. Lobsang Dargey; Plea Agreement- 5

f.    The EB-5 Offering Materials represented that defendant Lobsang Dargey would use the immigrant investors' $500,000 investments in the PAFM Project and Tower Project to build the projects in accordance with the Business Plans for each project. In addition, the EB-5 Offering Materials represented that defendant Lobsang Dargey would use the $45,000 administrative fees to pay sales commissions and other offering expenses. The EB-5 Offering Materials also represented that defendant Lobsang Dargey would make millions of dollars of equity contributions to the projects.

g.    Despite his representations in the EB-5 Offering Materials, defendant Lobsang Dargey knowingly: (1) failed to contribute any funds to the projects as equity; (2) used portions of the EB-5 investors' $500,000 capital contributions for purposes other than the construction of the PAFM Project and Tower Project; and (3) caused the PAFM Project and Tower Project to depart from the business plans for both projects in numerous material respects without informing the immigrant investors or USCIS. These actions could have rendered each investor ineligible for an EB-5 visa.

h.    Specifically, contrary to his representations, defendant Lobsang Dargey used a portion of the immigrant investors' $500,000 capital contributions for the PAFM Project and Tower Project: (1) to pay $11.5 million in commissions and syndication costs related to the offerings; and (2) to divert $16.8 million to other non-EB-5 real estate projects defendant Lobsang Dargey owned and controlled, including his Kirkland, Shoreline, and Othello projects.

i.    Between April 2012 and August 24, 2015, defendant Lobsang Dargey knowingly and deliberately filed and caused to be filed with USCIS numerous documents, including the Offering Materials, knowing that the documents contained material misrepresentations and omissions concerning the PAFM and Tower projects. Defendant Lobsang Dargey did so knowing that his conduct was unlawful.

j.    **The Voya Loans:** To fund a portion of the PAFM Project, defendant Lobsang Dargey applied for, and obtained, a $25 million construction loan from Voya Insurance and Annuity Company ("Voya"). As part of the loan, Voya required defendant Lobsang Dargey to personally guarantee the loan through construction and stabilization of the project. To verify that defendant Lobsang Dargey had sufficient financial means to satisfy the personal guarantee, Voya required defendant Lobsang Dargey to disclose personal financial information, including concerning his personal liquid assets.

k.    To satisfy Voya, defendant Lobsang Dargey submitted a personal financial statement to Voya that represented that a Path America Asia, Ltd. bank account at HSBC in Hong Kong contained over $9.6 million in U.S. dollars. In support of this statement, defendant Lobsang Dargey created and caused to be created a materially false

U.S. v. Lobsang Dargey; Plea Agreement- 6

and fraudulent bank statement for the HSBC account that showed a balance in excess of $9.6 million U.S. dollars when, in fact, the balance was less than $450,000 U.S. dollars. Defendant Lobsang Dargey submitted this fraudulent bank statement to Voya to support his false and fraudulent representations on his personal financial statement.

l.      After obtaining the $25 million loan from Voya, defendant Lobsang Dargey was required to provide quarterly financial statements to Voya.  Defendant Lobsang Dargey directed a Path America employee to alter the PAFM LLC balance sheets by removing entries that reflected that millions of dollars had been diverted from the projects.  Defendant Lobsang Dargey then directed the employee to affix his signature to the altered financial statements and submit them to Voya.

m.      Defendant Lobsang Dargey also attempted to obtain a $66 million construction loan from Voya for the Tower Project.  Again, Voya required that defendant Lobsang Dargey and his wife personally guarantee the loan, and required information concerning defendant Lobsang Dargey's financial condition to ensure he had sufficient liquid assets to fund construction cost overruns and to make payments on the loan.  On or about July 27, 2015, defendant Lobsang Dargey sent Voya another materially false and fraudulent Path America Asia, Ltd. HSBC bank statement which defendant Lobsang Dargey had altered or caused to be altered to make it appear that the account balance was approximately $8.2 million U.S. dollars when, in fact, the account balance was less than $400,000 U.S. dollars.

n.      *The Binjiang Investment:*  In 2015, defendant Lobsang Dargey solicited and obtained $60 million from a Chinese investment company, Shanghai Binshun Investment Management Company ("Binjiang"), for equity investments in the Tower Project ($30 million) and defendant Lobsang Dargey's Shoreline and Othello projects ($15 million each).

o.      On or about June 4, 2015, prior to Binjiang's funding of the investments, a representative of Deloitte Touche Tomhatsu Ltd. ("Deloitte") in Hong Kong asked defendant Lobsang Dargey to send financial statements for the three projects. At the time, certain entries on the Potala Tower Seattle LLC balance sheet reflected that Potala Tower Seattle LLC was owed $16.8 million from the PAFM Project and defendant Lobsang Dargey's Kirkland, Shoreline, and Othello projects as a result of the defendant Lobsang Dargey's diversions described above (the "due from entries").

p.      On or about June 8th and 9th, 2015, defendant Lobsang Dargey directed other Path America employees to: (1) remove the $16.8 million in due from entries from the Potala Tower Seattle LLC balance sheet and to place them on the balance sheet for Path America Tower LP; and (2) reduce the amount of immigrant

U.S. v. Lobsang Dargey; Plea Agreement- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 investor funds loaned from Path America Tower LP to Potala Tower Seattle LLC by
2 $16.8 million.

3       q.    As part of its investment into the Tower Project and the Shoreline
4 and Othello projects, Binjiang required defendant Lobsang Dargey to make equity
contributions in the amounts of $15 million for the Tower Project and $5 million each for
5 the Shoreline and Othello projects. These obligations were set out in a series of
6 Investment Agreements between Binjiang and business entities controlled by defendant
Lobsang Dargey. With respect to the Tower Project, defendant Lobsang Dargey
7 represented to Binjiang that he had already contributed approximately $12 million to
8 purchase the land for the project, and would make an additional $3 million equity
contribution. In fact, defendant Lobsang Dargey had purchased the Tower land with
9 seller financing, and subsequently used investor funds to pay for the land. With respect
10 to Othello, defendant Lobsang Dargey represented that he had already contributed $3
million to the project and would make an additional equity contribution of $2 million.
11 With respect to Shoreline, the Shoreline Investment Agreement required defendant
12 Lobsang Dargey to make a total equity contribution of $5 million. Defendant Lobsang
Dargey represented that he had already contributed $8.5 million toward the Shoreline
13 project. Accordingly, the Shoreline Investment Agreement stated that defendant Lobsang
14 Dargey had made an "excess" equity contribution of $3.5 million, which would be
"refunded" to defendant Lobsang Dargey out of Binjiang's $15 million investment.
15

16       r.    On or about June 8 and 9, 2015, defendant Lobsang Dargey directed
another Path America employee to make a number of journal entries in the accounting
17 records for Potala Tower Seattle LLC, Path Shoreline LLC, Path Othello LLC, and
18 Dargey Development to make it appear that Lobsang Dargey and Dargey Development
had incurred millions of dollars of direct overhead expenses on behalf of the projects for
19 which Lobsang Dargey and Dargey Development had not been reimbursed, when in fact,
20 Lobsang Dargey and Dargey Development had not incurred these costs. The effect of
these entries was to create the appearance that Potala Tower Seattle LLC owed $3.7
21 million to Lobsang Dargey, and that Path Shoreline LLC and Path Othello LLC owed
22 Dargey Development $500,000 and $1,500,000, respectively. Defendant Lobsang
Dargey then directed the employee to convert these purported obligations into equity
23 credits in favor of Lobsang Dargey and Dargey Development, making it appear that
24 equity contributions in these amounts had been made to the projects. These journal
entries lacked economic substance, and neither Dargey Development nor Lobsang
25 Dargey received any real economic benefit from these journal entries.

26       s.    Similarly, defendant Lobsang Dargey also directed the Path America
27 employee to make a number of journal entries in the accounting records for Path
Shoreline LLC, Path Othello LLC, and Dargey Development to make it appear that
28

U.S. v. Lobsang Dargey; Plea Agreement- 8

Dargey Development had earned millions of dollars in developer fees. These entries made it appear as if Path Shoreline LLC and Path Othello LLC owed developer fees to Dargey Development in the amounts of $1,000,000, and $2,500,000, respectively. Defendant Lobsang Dargey then directed the employee to convert these fictitious obligations into equity credits in favor of Dargey Development. As a result of these journal entries, the balance sheets for Path Shoreline LLC and Path Othello LLC reflected that defendant Lobsang Dargey and the entities he controlled had complied with the equity contribution requirements set forth in the Investment Agreements with Binjiang. These journal entries lacked economic substance, and neither Dargey Development nor Lobsang Dargey received any real economic benefit from these journal entries.

t. **Overt Acts:** Lobsang Dargey agreed with other individuals known and unknown to engage in various overt acts in furtherance of the conspiracy to commit wire fraud on the investors and USCIS. As one example, on or about May 13, 2015, defendant Lobsang Dargey caused $6,000,000 derived solely from Potala Tower investors' capital contributions to be used to purchase land for defendant Lobsang Dargey's Shoreline project by means of an interstate and foreign wire transmission.

8. **United States Sentencing Guidelines**. Defendant understands and acknowledges that the Court must consider the sentencing range calculated under the United States Sentencing Guidelines and possible departures under the Sentencing Guidelines together with the other factors set forth in Title 18, United States Code, Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (4) the need for the sentence to afford adequate deterrence to criminal conduct; (5) the need for the sentence to protect the public from further crimes of the defendant; (6) the need to provide the defendant with educational and vocational training, medical care, or other correctional treatment in the most effective manner; (7) the kinds of sentences available; (8) the need to provide restitution to victims; and (9) the need to avoid unwarranted sentence disparity among defendants involved in similar conduct who have similar records. Accordingly, Defendant understands and acknowledges that:

U.S. v. Lobsang Dargey; Plea Agreement- 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit B - Page 35

1         a.     The Court will determine applicable Defendant's Sentencing

2  Guidelines range at the time of sentencing;

3         b.     After consideration of the Sentencing Guidelines and the factors in

4  18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

5  maximum term authorized by law;

6         c.     The Court is not bound by any recommendation regarding the

7  sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

8  range offered by the parties or the United States Probation Department, or by any

9  stipulations or agreements between the parties in this Plea Agreement; and

10         d.     Defendant may not withdraw his guilty plea solely because of the

11  sentence imposed by the Court.

12     9.    **Acceptance of Responsibility.**  At sentencing, *if* the district court

13  concludes Defendant qualifies for a downward adjustment for acceptance of

14  responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or

15  greater, the United States will make the motion necessary to permit the district court to

16  decrease the total offense level by three (3) levels pursuant to USSG §§ 3E1.1(a) and (b),

17  because Defendant has assisted the United States by timely notifying the United States of

18  his intention to plead guilty, thereby permitting the United States to avoid preparing for

19  trial and permitting the Court to allocate its resources efficiently.

20     10.    **Sentencing Factors**.  The parties agree that the following Sentencing

21  Guidelines provisions apply to this case:

22         a.     A base offense level of six (6) pursuant to USSG § 2B1.1(a)(2);

23         b.     A twenty (20) level enhancement pursuant to USSG

24  § 2B1.1(b)(1)(K) based upon a loss for guidelines purpose of more than $9,500,000 but

less than $25,000,000.  The total loss amount of $24,242,220 reflects $12,690,000 in total

25  administrative fees paid by investors, and an additional $11,552,220 in additional

26  commissions and syndication payments made out of the investors' $500,000 capital

27  contribution.

28

U.S. v. Lobsang Dargey; Plea Agreement- 10

c. A two (2) level enhancement pursuant to USSG § 2B1.1(b)(2)(A) because the defendant's offense involved ten (10) or more victims;

d. A two (2) level enhancement pursuant to USSG § 2B1.1(b)(10)(B) and (C) because: (1) a substantial part of the fraudulent scheme was committed from outside the United States; and (2) the offense otherwise involved sophisticated means and the defendant intentionally engaged in the conduct constituting sophisticated means;

e. A four (4) level enhancement pursuant to USSG § 3B1.1(a) because the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive; and

f. A two (2) level enhancement pursuant to USSG § 3B1.3 because the defendant abused a position of private trust in a manner that significantly facilitated the commission of the offense.

The parties agree that, with the exception of acceptance of responsibility referenced in paragraph 9, no other Sentencing Guidelines adjustments or enhancements are appropriate or readily provable. Defendant understands that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

11. **Restitution.** Defendant shall make restitution to the victims of his offense in the amount of $24,242,220. This amount, which reflects the loss to the victims of Defendant's conduct, includes $11,552,220 in unauthorized commission payments and syndication costs and $12,690,000 in administrative fees paid by the immigrant investors. Thirty-five (35) of the Tower investors were previously refunded the full amount of their capital contribution, and therefore, are entitled to $45,000 each representing their administrative fees. The remaining 247 investors shall each be entitled to receive total restitution of $91,770, which consists of (a) $46,770 for commissions and syndication costs, and (b) $45,000 for administrative fees. This amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

U.S. v. Lobsang Dargey; Plea Agreement- 11

In the event that any investor is repaid an amount greater than $453,230 of the principal amount of his or her capital contribution through returns on the investment or money distributed by the Receiver, the $46,770 portion of the restitution obligation to that investor will be reduced by the amount he or she received in excess of $453,230, such that an investor who is repaid his or her full $500,000 capital contribution shall not be entitled to any restitution for commissions and syndication costs. In addition, to the extent any portion of the $45,000 administrative fee is returned to any investor, the $45,000 portion of the restitution obligation for that investor will be reduced accordingly. In light of Defendant's restitution obligation, the United States agrees to recommend that no fine be imposed.

12.    **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub.L. No. 105-119 (1997).

13.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea

U.S. v. Lobsang Dargey; Plea Agreement- 12

1  Agreement and Defendant may be prosecuted for all offenses for which the United States
2  has evidence.  Defendant agrees that, in the event Defendant breaches this Plea
3  Agreement, Defendant will not oppose any steps taken by the United States to nullify this
4  Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement.
5  Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant
6  has waived any objection to the re-institution of any charges in the Indictment that were
7  previously dismissed or any additional charges that had not been prosecuted.

8       Defendant further understands that if, after the date of this Agreement, Defendant
9  should engage in illegal conduct, or conduct that violates any conditions of release or the
10  conditions of his confinement, (examples of which include, but are not limited to,
11  obstruction of justice, failure to appear for a court proceeding, criminal conduct while
12  pending sentencing, and false statements to law enforcement agents, the Pretrial Services
13  Officer, Probation Officer, or Court), the United States is free under this Plea Agreement
14  to file additional charges against Defendant or to seek a sentence that takes such conduct
15  into consideration by requesting the Court to apply additional adjustments or
16  enhancements in its Sentencing Guidelines calculations in order to increase the applicable
17  advisory Guidelines range, and/or by seeking an upward departure or variance from the
18  calculated advisory Guidelines range.  Under these circumstances, the United States is
19  free to seek such adjustments, enhancements, departures, and/or variances even if
20  otherwise precluded by the terms of the plea agreement.

21       **14.**    **Waiver of Appellate Rights and Rights to Collateral Attacks.**

22       Defendant acknowledges that by entering the guilty plea required by this plea
23  agreement, Defendant waives all rights to appeal from his conviction and any pretrial
24  rulings of the court.  Defendant further agrees that, provided the court imposes a custodial
25  sentence that is within or below the Sentencing Guidelines range (or the statutory
26  mandatory minimum, if greater than the Guidelines range) as determined by the court at
27  the time of sentencing, Defendant waives to the full extent of the law:

28  U.S. v. Lobsang Dargey; Plea Agreement- 13

1        a.     Any right conferred by Title 18, United States Code, Section 3742,

2  to challenge, on direct appeal, the sentence imposed by the court, including any fine,

3  restitution order, probation or supervised release conditions, or forfeiture order (if

4  applicable); and

5        b.     Any right to bring a collateral attack against the conviction and

6  sentence, including any restitution order imposed, except as it may relate to the

7  effectiveness of legal representation; and

8      This waiver does not preclude Defendant from bringing an appropriate motion

9  pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the

10  decisions of the Bureau of Prisons regarding the execution of his sentence.

11      If Defendant breaches this Plea Agreement at any time by appealing or collaterally

12  attacking (except as to effectiveness of legal representation) the conviction or sentence in

13  any way, the United States may prosecute Defendant for any counts, including those with

14  mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea

15  Agreement.

16      15.   **Voluntariness of Plea**.  Defendant agrees that he has entered into this Plea

17  Agreement freely and voluntarily and that no threats or promises, other than the promises

18  contained in this Plea Agreement, were made to induce Defendant to enter his plea of

19  guilty.

20      16.   **Statute of Limitations**.  In the event this Agreement is not accepted by the

21  Court for any reason, or Defendant has breached any of the terms of this Plea Agreement,

22  the statute of limitations shall be deemed to have been tolled from the date of the Plea

23  Agreement to: (1) thirty (30) days following the date of non-acceptance of the Plea

24  Agreement by the Court; or (2) thirty (30) days following the date on which a breach of

25  the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

26

27

28

U.S. v. Lobsang Dargey; Plea Agreement- 14

Case 2:15-cv-01350-JLR Document 64-2 Filed 10/31/18 Page 41 of 42
Case 2:15-cv-01350-JLR Document 64-2 Filed 10/31/18 Page 41 of 42

1   17.   **Completeness of Agreement**.  The United States and Defendant

2   acknowledge that these terms constitute the entire Plea Agreement between the parties.

3   This Agreement binds only the United States Attorney's Office for the Western District

4   of Washington.  It does not bind any other United States Attorney's Office or any other

5   office or agency of the United States, or any state or local prosecutor.

6       Dated: January 4, 2017.

7

8   _____

    LOBSANG DARGEY

9   Defendant

10  _____

11  ROBERT MAHLER

    Attorney for Defendant

12

13  _____

14  JUSTIN W. ARNOLD

15  Assistant United States Attorney

16

17  _____

18  SETH WILKINSON

    Assistant United States Attorney

19

20

21

22

23

24

25

26

27

28

U.S. v. Lobsang Dargey; Plea Agreement- 15

Page 42

Case 2:15-cv-01350-JLR Document 640-2 Filed 10/31/18 Page 42 of 42
Case 2:15-cv-01350-JLR Document 506 Filed 03/02/17 Page 22 of 22

**ANNEX B TO THE CONSENT TO FINAL JUDGMENT AS TO DEFENDANT LOBSANG DARGEY AND RELIEF DEFENDANT PATH OTHELLO, LLC**

PROPERTIES, BUSINESSES, FUNDS AND ASSETS CONTROLLED BY THE RECEIVER FOR WHICH LOBSANG DARGEY AGREES TO RELINQUISH ALL LEGAL AND EQUITABLE RIGHT, TITLE, AND INTEREST:

- Path America, LLC
- Path America SnoCo LLC
- Path America Farmer's Market, LP
- Path America KingCo LLC
- Path America Tower, LP
- Path Tower Seattle, LP
- Potala Tower Seattle, LLC
- Potala Shoreline, LLC
- Potala Village Kirkland, LLC
- Dargey Development, LLC
- Dargey Enterprises LLC
- Dargey Holdings, LLC
- Path Farmer's Market, LLC
- Everett Potala Market Place Project
- Potala Shoreline Project
- Potala Village Kirkland Project
- Path Othello, LLC

Notwithstanding the foregoing, this relinquishment shall not include Defendant Lobsang Dargey's right, title, and interest, through Dargey Enterprises LLC, in the property commonly referred to as the Everett Public Market (2804 Grand Ave. and 2809 W. Marine View Drive in Everett, Washington).